STATE of Missouri, ex rel. Wes STRICK-ER, M.D., and Ozark Management, Inc., Appellants,

v.

Richard HANSON and Office of Administration, Respondents.

No. WD 47202.

Missouri Court of Appeals,
Western District.

July 13, 1993.

Terry C. Allen, Thomas W. Rhyne, Craft Fridkin & Rhyne, Jefferson City, for appellants.

Melody A. Emmert, Jefferson City, for respondents.

Before LOWENSTEIN, C.J., and BERREY and ULRICH, JJ.

ULRICH, Judge.

William E. "Wes" Stricker, M.D., and Ozark Management, Inc., ("Appellants") appeal the grant of summary judgment entered by the Cole County Circuit Court in favor of James R. Moody, Commissioner of Administration,[1] and the Office of Administration ("Respondents"). This appeal concerns the award of a public contract by Respondents for a helicopter lease. Appellants contend that the trial court erred in quashing its preliminary writ of mandamus and in denying Appellants' request for injunctive relief because "as a matter of law, the award of the public contract to Helicopters, Inc. was unlawful, thereby rendering the contract void." The judgment of the trial court is reversed, and the cause is remanded with directions that the trial court enjoin Respondents from utilizing the services of Helicopters, Inc., as provided in the contested contract.

In the spring of 1992, staff members of the Missouri Department of Conservation advised Respondents that they wanted to lease helicopter services. In early April of 1992, Respondents received a Purchase Requisition from the Department of Conservation describing the general lease terms desired and the technical specifications the helicopter needed to meet. The requisition stated on the first page, "Aircraft to be a Bell Jet Ranger, Model 206B." With respect to the identification of the helicopter to be provided under the contract, the requisition stated:

General

Bidder to provide the following information about helicopter being offered:

a. Make _____
b. Model _____
c. Year _____
d. Hull Value $_____ (to determine insurance requirements)

The requisition also contained limitations on the number of hours allowed on the engine since overhaul and on the airframe and required that no normal major helicopter component changes could be due during the lease period.

An Invitation for Bid (IFB) was prepared by Respondents and disseminated to nine potential bidders. The Technical Specifications section of the IFB (Part IV) stated in part that "[t]he helicopter must be a four-place turbine-powered unit, either a Bell Jet Ranger 206B, as per the specifications listed below." However, the IFB incorporated the standard State of Missouri Terms and Conditions of an Invitation for Bid. One condition provided that "[a]ny manufacturer's names, trade names, brand names, information and/or catalogue numbers listed in a specification are for informational purposes only and ... [t]he bidder may offer any brand which meets or exceeds the specification of any item." Thus, the technical specifications detailed in the IFB could have been met by a number of helicopters including a Bell Jet Ranger 206B II, a Bell Jet Ranger 206B III, and helicopters manufactured by companies other than Bell.

1. Richard Hanson succeeded James R. Moody in office as Commissioner of Administration and was subsequently substituted for Mr. Moody as Respondent in this action.

The only place in the IFB for identification of the helicopter proposed to be provided under the lease was included in the Special Instructions to Bidders (Part III). The paragraph under which this information was to be provided was entitled "Insurance:"

8. *Insurance:*

8.1 The State of Missouri will provide Hull Insurance. Complete the following information for the helicopter offered for lease:

Make: _____
Model: _____
Year: _____
Serial Number: _____
Hull Value: $_____

The IFB contained the same limitations on hours and component part changes as the requisition and requested that the bidders designate a cost per hour for the first 300 hours of service as well as an hourly cost for each hour in excess of 300 hours.

As to the process to be followed in awarding the contract, the IFB provided:

The bidder must respond to this IFB by submitting all data required herein in order for his/her response to be evaluated and considered for award.

\* \* \* \* \* \*

The bidder should present in detail all products and services proposed in this response to this invitation. It is the bidder's responsibility to make sure all products proposed are adequately described.

\* \* \* \* \* \*

Any contract resulting from this request shall be awarded to the bidder's response providing the lowest and best bid to the State of Missouri.

In addition to providing that the bidder may offer any brand of helicopter which met or exceeded the specifications, the State of Missouri Terms and Conditions of an Invitation for Bid attached to the IFB provided:

\* \* \* \* \* \*

A bid may be modified or withdrawn by written notice received prior to the official closing date and time specified.... Verbal phone requests to withdraw or modify a bid will not be considered.

\* \* \* \* \* \*

After the official closing date and time, no bid may be modified or withdrawn.

\* \* \* \* \* \*

As the best interest of the State may require, the right is reserved ... to reject any and all bids or waive any minor irregularity or technicality in bids received.

\* \* \* \* \* \*

Awards will be made to the bidder whose bid (1) meets the specifications and all other requirements of the IFB and (2) is the lowest and best bid, considering price, responsibility of the bidder and all other relevant factors.

In accordance with the IFB, the bidding process was closed on May 5, 1992, at 2:00 p.m. Four bids were received by Respondents before the official closing time, including two proposals from Appellants and one from Helicopters, Inc.[2] One of the bids from Appellants stated in response to the paragraph on insurance that Appellants would provide a 1979 Bell Jet Ranger 206B III, serial number 2875, having a hull value of $595,000. In their second bid, Appellants offered to provide a 1978 "McDonald [sic] Douglas" Hughes 500D, serial number 500–273 (N345), having a hull value of $595,000. Appellants also included as part of their bid package on the Bell Jet Ranger 206B III information on the number of hours on the engine and the airframe and the type of equipment contained on the helicopter beyond that required by the IFB.

Helicopters, Inc., responded to the paragraph of the IFB requesting information on the helicopter for insurance purposes by stating, "To be determined. Helicopters, Inc. has not determined which aircraft by serial number will be placed on the contract. The helicopter provided will meet or

2. The fourth timely bid was submitted by Rotor-Craft Partnerships. Since RotorCraft is not a party to this action and no issues have been raised regarding its bid, further discussion of its bid will not be included in this opinion.

exceed all specifications as outlined in Part IV, technical specifications." In response to another section of the IFB, Helicopters, Inc., certified that all of its mechanics were "Bell Factory trained" and stated that the hull value of the helicopter offered would be $375,000. As for the aircraft hour and component part change limitations, Helicopters, Inc., agreed "Aircraft to be provided will not have any major component changes due. Aircraft will have less than 1000 hours total time on engine since overhaul." Helicopters, Inc., also stated it carried $25 million in aircraft insurance and directed Respondents' attention to a certificate of insurance it provided showing the liability insurance coverage it maintained on its aircraft. The certificate listed nineteen aircraft, including several Bell 206B IIs and 206B IIIs.

Helicopters, Inc., offered the lowest price of the four bids submitted in its response to the IFB.[3] Sometime after the official closing time for the receipt of bids and the subsequent bid opening, a Department of Conservation staff member contacted Respondents' purchasing manager and asked him to confirm that Helicopters, Inc., would supply a helicopter meeting the technical specifications of the IFB. On or about May 13, 1992, the purchasing manager called Helicopters, Inc., and told its chief pilot that Helicopters, Inc., needed to designate the model number of the aircraft it was offering and that the helicopter would have to meet the technical specifications of the IFB.

Following the telephone call, the purchasing manager received a letter dated May 13, 1992, from the chief pilot of Helicopters, Inc., which provided in part:

As a result of our conversation today, we have several questions with regards to the change in the specifications.

What was the justification for changing the requirement from a BII or BIII to a BIII?
Under what authority can a bid that has already been let be changed?
What are the ramifications, if we provide BII, i.e., will the contract be rebid?
Can an alternate pad be provided or does it have to be that specific model number?

Helicopters Inc. intends to meet the specifications as stated in Part IV. If required to preclude a rebid we will provide a 206BIII with the specifications as listed. It would of course be to our benefit to furnish a BII if acceptable.... Additionally, is the commission meeting next week to review the bids open to the public and if so where and when is it to be held.

As he later stated in a sworn affidavit, the purchasing manager did not consider this letter to be responsive to his inquiry. Upon receipt of the letter, the purchasing manager called Stephen C. Leiber, president and owner of Helicopters, Inc., and told him that he needed to advise Respondents, in writing, of the model of the helicopter to be provided in response to the IFB. On May 15, 1992, the purchasing manager received a facsimile transmission from Mr. Leiber advising Respondents that Helicopters, Inc., would provide a Bell Jet Ranger 206B III and that the serial number would be communicated to Respondents within forty-eight hours of notification that Helicopters, Inc., had been awarded the contract. The contract was awarded to Helicopters, Inc., that same day.

Pursuant to the award, on or about July 1, 1992, Helicopters, Inc., delivered a Bell Jet Ranger 206B III for use by the Department of Conservation during the period of July 1, 1992, to June 30, 1993[4]. The serial number of the helicopter was Z52Z.[5]

3. Appellants offered the following pricing information:

Bell Jet Ranger 206B III:
    1st 300 hours:        $359.00 per hour
    Over 300 hours:       $359.00 per hour

Hughes 500D:
    1st 300 hours:        $319.00 per hour
    Over 300 hours:       $359.00 per hour
Helicopters, Inc., bid the following amounts:

    1st 300 hours:        $258.00 per hour
    Over 300 hours:       $248.00 per hour

4. The IFB provided that the State had the right, at its sole option, to renew the contract for two additional one-year periods.

5. This helicopter was not one listed on the certificate of insurance included by Helicopters, Inc., with their response to the IFB.

On June 24, 1992, Appellants filed a four-count Petition seeking Writ of Mandamus and Injunctive Relief. Appellants alleged in their petition that the award of the contract for the helicopter lease to Helicopters, Inc., was unlawful and therefore void because (1) the bid of Helicopters, Inc., was incomplete and did not conform to the requirements of the specifications of the IFB; (2) Helicopters, Inc., was allowed to amend its bid after the closing of the bidding in violation of the provisions of the IFB, the regulations of the Office of Administration, and Missouri statutes, and (3) Helicopters, Inc., was allowed to negotiate the terms of its proposal with Respondents after the closing of the bidding. Count I, brought by Appellants as taxpayers,[6] and Count II, brought by Ozark Management, Inc., separately as a qualified bidder, sought an order in mandamus directing Respondents to rescind the contract. In Count III, brought by Appellants as taxpayers, and Count IV, brought separately by Ozark Management, Inc., as a qualified bidder, Appellants requested an injunction to prevent Respondents from proceeding further under the contract.

The trial court issued a preliminary order in mandamus on June 24, 1992. The parties filed a stipulation of facts along with supporting affidavits. Both parties then filed motions for summary judgment. On October 27, 1992, the trial court entered summary judgment for Respondents. Appellants appeal the grant of summary judgment.

### I. Standing

As an initial matter, Appellants allege they have standing to bring this action as taxpayers, while Ozark Management, Inc., contends separately that it has standing as "a participant in the public contract process." In *Eastern Missouri Laborers Dist. Council v. St. Louis County*, 781 S.W.2d 43, 46–47 (Mo. banc 1989), the Missouri Supreme Court established the right of a taxpayer to bring an action to enjoin the illegal expenditure of public funds un-

der contracts entered into by public officials when the taxpayer can demonstrate "a direct expenditure of funds generated through taxation." Respondents do not dispute Appellants' standing to bring this suit as taxpayers, admitting that payment for services rendered under the contract in this case will be from public funds generated through taxation and stipulating to the fact that Appellants have paid Missouri sales and income taxes. Respondents do challenge the standing of Ozark Management, Inc., to bring Counts II and IV as a participant in the public contract process. However, because both parties agree that Appellants have standing as taxpayers and because Ozark Management, Inc., does not ask for any relief as a qualified bidder that it is not seeking jointly with Dr. Stricker as a taxpayer, whether Ozark Management, Inc., has standing as a participant in the public contract process is of no consequence to this action and is not addressed by this court.

### II. Lawfulness of the Award

Appellants argue that the trial court erred in quashing its preliminary writ of mandamus and in denying their request for injunctive relief. They contend that as a matter of law, the award of the public contract to Helicopters, Inc. was unlawful, thereby rendering the contract void.

■ Under Missouri law, the Commissioner of the Office of Administration was responsible for procuring the helicopter services requested by the Department of Conservation. *See* §§ 34.030, RSMo 1986 (the Commissioner of Administration has the authority to purchase all supplies for all state departments); 34.010.3, and .4, RSMo 1986 (the term "purchase" includes "the rental or leasing of any equipment, articles or things," while the term "supplies" is deemed to mean "supplies, materials, equipment, contractual services and any and all articles or things"). In order to enter into a valid contract, the Commissioner must exercise his authority "in manner and form as directed by the Legislature."

---

**6.** The parties stipulated that Appellants have paid both income and sales taxes in the State of Missouri.

*Aetna Ins. Co. v. O'Malley*, 343 Mo. 1232, 1239, 124 S.W.2d 1164, 1166 (Mo. banc 1938).

■ The procedures for awarding state contracts are established by statute. Section 34.040, RSMo Supp.1992, provides that all purchases of $1000 or more must be based on competitive bids, with the contract let only to the "lowest and best bidder." While the commissioner can reject any or all bids, in order to even be considered, a bid must be based on standard specifications wherever such specifications have been prepared by the commissioner. § 34.040. The statutory provisions relating to the form and content of bids must be complied with to render the bid a valid basis of a state contract. 81A C.J.S. *States* § 163 (1977).

The IFB in this case echoes the statutory provisions, requiring that the bidder supply all data requested in the IFB in order for the bidder's response to be evaluated and considered and requiring the bidder to present "in detail" all products proposed in the response. Furthermore, all information requested in the IFB must be provided by the official closing time, because after that time, no bid may be modified or withdrawn.

■ Appellants allege that the bid submitted by Helicopters, Inc., was not responsive to the IFB. They contend that the bid of Helicopters, Inc., varied materially from the requirements of the IFB because it did not specifically identify the helicopter to be provided and, therefore, Respondents had no discretion to accept it.

■ The research of the parties and of this court has disclosed no Missouri cases addressing the question of how to determine whether a bid in a public contracting situation is "responsive." However, other jurisdictions have confronted this issue, defining a responsive bid as one which "conforms in all *material respects* to the awarding authority's specifications." *Irwin R. Evens & Son, Inc. v. Board of the Indianapolis Airport Auth.*, 584 N.E.2d 576, 585 (Ind.Ct.App.1992); *see also Professional Food Servs. Management, Inc. v.*

*North Carolina Dep't of Admin.*, 109 N.C.App. 265, 426 S.E.2d 447, 450 (1993). The test of whether a variance is material is "whether it gives a bidder a substantial advantage or benefit not enjoyed by other bidders." *Leo Michuda & Son v. Metropolitan Sanitary Dist.*, 97 Ill.App.3d 340, 52 Ill.Dec. 869, 873, 422 N.E.2d 1078, 1082 (1981); *see In re Appeal of Associated Sign & Post, Inc.*, 485 N.E.2d 917, 925 (Ind.Ct.App.1985); *Scheckel v. Jackson County*, 467 N.W.2d 286, 291 (Iowa Ct. App.1991); *State ex rel. KNC, Inc. v. New Mexico Dep't of Fin. & Admin.*, 103 N.M. 167, 704 P.2d 79, 84 (Ct.App.1985); *Professional Food Servs.*, 426 S.E.2d at 450; *Gridley v. Engelhart*, 322 N.W.2d 3, 8 (S.D.1982); *Farmer Constr., Ltd. v. State*, 98 Wash.2d 600, 656 P.2d 1086, 1088 (1983). This test "balances the interest of the public in the lowest possible price against the interest of bidders in a fair forum," *New Mexico Dep't of Fin. & Admin.*, 704 P.2d at 84, and reflects a belief that " '[e]very element which enters into the competitive scheme should be required equally for all and should not be left to the volition of the individual aspirant tó follow or to disregard and thus to estimate his bid on a basis different from that afforded the other contenders.' " *Leo Michuda & Son*, 52 Ill. Dec. at 873, 422 N.E.2d at 1082 (quoting *Hillside Township v. Sternin*, 25 N.J. 317, 136 A.2d 265, 268 (1957)).

■ Although minor variances from the specifications will not necessarily render a bid invalid, a material variance requires its rejection. *Leo Michuda & Son*, 52 Ill.Dec. at 873, 422 N.E.2d at 1082; *Irwin R. Evens & Son*, 584 N.E.2d at 585; *Associated Sign & Post*, 485 N.E.2d at 925; *Telephone Associates, Inc. v. St. Louis County Bd.*, 350 N.W.2d 398, 400 (Minn.Ct. App.1984). Moreover, a bid which contains a material variance may not be corrected after the bids have been opened in order to make it responsive. *Leo Michuda & Son*, 52 Ill.Dec. at 873, 422 N.E.2d at 1082; *Associated Sign & Post*, 485 N.E.2d at 925; *Gridley*, 322 N.W.2d at 8.

The IFB disseminated by Respondents clearly required each bidder to identify the

make, model, year, and serial number of the helicopter offered. At the time the bids were opened, the bid of Helicopters, Inc., did not provide this information, stating only "To be determined. Helicopters, Inc. has not determined which aircraft by serial number will be placed on the contract. The helicopter provided will meet or exceed all specifications as outlined in Part IV, technical specifications." In response to Respondents' request made eight days after the bids had been opened (and made public) that Helicopters, Inc., designate the model number of the aircraft it was offering, Helicopters, Inc., narrowed its bid by providing in a letter to Respondents, "If required to preclude a rebid we will provide a 206BIII with the specifications as listed. It would of course be to our benefit to furnish a BII if acceptable." Ten days after the bids were opened, Helicopters, Inc., advised Respondents that it would provide a Bell Jet Ranger 206B III and that it would forward the serial number within forty-eight hours of notification that it had been awarded the contract.

*Leo Michuda & Son,* 52 Ill.Dec. at 871, 422 N.E.2d at 1080, involved a similar type of omission in a bid for a public contract. In *Leo Michuda & Son,* the invitation to bid for a roofing job for a city sanitation district included an addendum which notified potential bidders that one of the district's goals was to provide a certain percentage of the total dollar value of the project to minority and small businesses. The addendum required bidders to submit a "Goal Disclosure Form" listing the subcontracts intended for award to minority and small businesses. The Goal Disclosure Form of one contractor included the statement: "No firm contractual commitments at this time, but we will use every available means to obtain the services of Minority Business Enterprises in performing this

work." One month after the bids were opened, the contractor submitted a second Goal Disclosure Form which included the names of two minority subcontractors and agreed prices totaling 18% of the contractor's bid. The district subsequently awarded the contract for the project to that contractor.

The Illinois Court of Appeals found that the variance between the contractor's bid and the invitation for bid was a material one because it gave the contractor a substantial advantage not enjoyed by the other bidders. *Id.* 52 Ill.Dec. at 874, 422 N.E.2d at 1083. The submission of the contractor's Goal Disclosure Form roughly one month after the bids were opened "gave [the contractor] the advantage of negotiating with minority subcontractors after it had submitted the apparent low bid." *Id.* The court of appeals found that because the contractor's bid as initially submitted was unresponsive and could not be amended after the bids were opened in order to make it responsive, the district improperly awarded the contract. *Id.*

Under the circumstances of this case, Respondents' consideration of the bid of Helicopters, Inc., afforded Helicopters, Inc., a substantial advantage or benefit not enjoyed by the other bidders. The specific model being offered was an important part of each bid.[7] Even assuming that Helicopters, Inc., did not receive inside information from Respondents on what model would win the award (as Appellants argue is evinced by the May 13, 1992, letter), after the other bidders had submitted their proposals, committed themselves to the type of helicopter they were going to provide under the contract, and had that commit-

---

7. Respondents contend that the only reason for requiring information on the make, model, year, and serial number of the offered aircraft was to allow the State to secure hull insurance. Even if this were true, it does not diminish the fact that this information was nonetheless requested in the IFB and that Helicopters, Inc., failed to provide it in its initial bid. Moreover, although the only place where this information was to be provided was under the paragraph entitled *"Insurance,"* this information (at least as to the model to be provided) appears to have been essential to the comparison of the bids, for Respondents twice requested that Helicopters, Inc., specify the model of the aircraft it was offering and did not award the contract until that information was disclosed.

ment made public, Helicopters, Inc., was given an extra ten days, with the knowledge that it was the low bidder, to view the competition and determine what model it would have to offer to win the award.

Respondents argue that by describing the technical features the offered helicopter would have, providing that "Bell factory trained" mechanics would service the helicopter, and attaching a certificate of insurance indicating ownership of several Bell 206B IIs and IIIs, the bid of Helicopters, Inc., was responsive to the IFB. However, including this information in its response to the IFB did not obligate Helicopters, Inc., to provide a particular model of aircraft, or even one that the corporation already owned, for as the parties stipulated, several different aircraft, including the Bell Jet Ranger 206B II, the Bell Jet Ranger 206 B III, and helicopters manufactured by manufacturers other than Bell could have met the detailed equipment specifications set out in Part IV of the IFB.

In a sealed, competitive bidding situation, knowing what the competition has offered and having extra time not afforded to the others to match or improve upon those bids is an advantage. The initial bid of Helicopters, Inc., was nonresponsive and should have been rejected. Respondents' acceptance of Helicopters, Inc.'s, bid as modified after the bid opening violates both Missouri statutes, § 34.040 (when standard specifications have been prepared by the commissioner, "[a]ll bids shall be based on [those] specifications"), and the IFB (requiring the bidder to present "in detail" all products proposed in the response by the official closing time and prohibiting modification of bids after the closing time) and contradicts the notion that competitive bidding procedures for public contracts should ensure "that all who may wish to bid shall have a fair opportunity to compete in a field where no favoritism is shown or may be shown to other contestants." *City of Maryville ex rel. Citizens' Nat'l Bank v. Lippman*, 151 Mo.App. 447, 452, 132 S.W. 47, 48 (Mo.App.

1910). Respondents' award of the helicopter lease to Helicopters, Inc., was unlawful and is, therefore, void.

### III. Remedy

Under the facts of this case, the proper remedy is injunctive relief. By declaring the contract void and of no legal effect, this court has announced that the contested contractual relationship between Respondents and Helicopters, Inc., does not exist. Should Respondents desire to lease helicopter services in the future, they must comply with the established legal procedures for obtaining such services. Since Respondents are required to follow these procedures, and since no contractual relationship exists between Helicopters, Inc., and Respondents, Respondents should be enjoined from utilizing the services of Helicopters, Inc., pursuant to the contested contract.

The judgment of the trial court is reversed, and the case is remanded to the trial court with directions to enjoin Respondents from utilizing the services of Helicopters, Inc., as provided in the contested contract.

All concur.