

# Missouri Court of Appeals
## Southern District

### Division One

| | |
|---|---|
| CHARLES BRANNUM and CHRIS BROWNING, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| and | ) |
| | ) No. SD33156 |
| CSE ENTERPRISES, LLC, | ) Filed: August 27, 2014 |
| | ) |
| Plaintiff/Appellant, | ) |
| | ) |
| vs. | ) |
| | ) |
| CITY OF POPLAR BLUFF, MISSOURI, | ) |
| | ) |
| Defendant/Respondent. | ) |

### APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

Honorable Michael M. Pritchett, Circuit Judge

**AFFIRMED**

CSE Enterprises, LLC ("CSE") appeals the judgment[1] of the trial court concluding CSE was not entitled to an extraordinary writ (1) ordering the City of Poplar Bluff ("City") to award a contract for work on City's electrical generation plant to CSE, or (2) ordering City to rebid the contract at issue. We affirm the trial court's judgment.

---

[1] Although Charles Brannum ("Brannum") and Chris Browning ("Browning") were co-plaintiffs in the underlying litigation, only CSE appealed the judgment of the trial court. Brannum and Browning did not join in the notice of appeal.

## Factual and Procedural History[2]

City, through its Municipal Utilities Division, owns and operates an electrical generation plant. The plant operates under Environmental Protection Agency ("EPA") regulations known collectively as "Reciprocating Internal Combustion Engines National Emission Standards for Hazardous Air Pollutants" or "RICE NESHAP."[3]

In 2013, City began efforts to bring the plant into compliance with the RICE NESHAP standards prior to an EPA imposed deadline of May 2, 2014.

### *Bidding Process and City Evaluations*

City sent requests for bids[4] to at least five contractors, including Fairbanks Morse Engine ("Fairbanks"), which designed several of City's plant engines, and an advertisement for bids was placed in a newspaper. In response, City received three bid proposals: CSE's bid of $735,500; Fairbanks' bid of $983,072; and Farabee Mechanical, Inc.'s ("Farabee") bid of $1,050,567.

In reviewing the submitted bids Neal Williams ("Williams"), Systems Operations Supervisor for City, determined that none of the bids met all of City's bid specifications. On March 14, 2013, Williams sent an email to all bidders inviting them to contact City with corrections or supplements to their bids. CSE and Fairbanks both contacted City regarding their bids in response to Williams' email.

---

[2] We note that CSE's brief contains numerous Rule 84.04 violations in that: (1) it fails to provide citations to the record in support of the factual assertions in its argument; (2) the statement of facts fails to provide accurate citations to the record, omits favorable evidence, and sets forth evidence contradictory to the trial court judgment; (3) it fails to provide a complete and accurate table of authorities; and (4) includes argument beyond its point relied on. Failure to comply with Rule 84.04 constitutes grounds for dismissal of CSE's appeal. ***Porter v. Division of Employment Sec.***, 310 S.W.3d 295, 296 (Mo.App. E.D. 2010). Nevertheless, we grant review *ex gratia*.

All rule references are to Missouri Court Rules (2013).

[3] 40 C.F.R. 63 (ZZZZ).

[4] The bid specifications indicated that this was to be a "turnkey" type project where the winning bidder would be responsible for essentially all elements of the project from design to execution. City reserved the right to negotiate with bidders in the later stages of the bidding process, and to award the contract based on City's best interests.

2

Thereafter, Williams created a summary sheet rating the respective bids according to bid specifications, schedule of completion, price, experience, and past working relationship with City. The evaluation also contained determinations concerning the bidders' listed and unlisted exceptions to the specifications.

Williams ranked Fairbanks first for each of the five categories except for price. Out of the three bids, Williams ranked CSE third for conformance with specifications, second on schedule, and third on experience. He left the category for "ease of working together" blank for CSE and Farabee as City had no experience with these firms; however, City had worked successfully with Fairbanks on previous projects for City engines.

William Bach ("Bach"), City's General Manager of Utilities, presented Williams' bidding results and recommendations in a letter to City's Municipal Utility Advisory Board ("Advisory Board"). Bach advised that although CSE was the low bidder, its bid did not meet City's specifications. The Advisory Board recommended acceptance of the Fairbanks bid to the Poplar Bluff City Council.

### City Council Meeting and Award of RICE NESHAP Contract

On April 15, 2013, City Council met to collect information on the RICE NESHAP project bids, and to award the contract for that project. Bach presented the Advisory Board recommendation to City Council. He noted the disparity in price between the Fairbanks bid and the CSE bid, but advised City Council that the CSE bid did not meet the necessary specifications of the project. Bach further reported that the overall product offered by Fairbanks was better than that proposed by CSE, and the Advisory Board had concluded this merited approval of Fairbanks' higher bid.

Nick Barrack ("Barrack"), owner of CSE, then addressed City Council on behalf of CSE. After being given the opportunity to present evidence supporting the acceptance of CSE's bid, Barrack answered questions from City Council members. Barrack admitted CSE had not replaced catalytic converters of the size required by City's project. He also agreed that the thicker metal design submitted in the Fairbanks bid would give superior durability to Fairbanks' design. He indicated that for CSE to match Fairbanks' metal thickness, CSE would need to increase its bid.

Following Barrack's presentation, Randy Olsen of Universal Silencer, and Kevin Lidbury of Fairbanks, presented evidence in favor of the Fairbanks bid.

In discussing the bids, council members noted that the Fairbanks bid, though higher than the CSE bid, was still approximately $200,000 below what City had budgeted for the project and that sometimes "you get what you pay for." After hearing the presentations of the respective firms and considering the Advisory Board's recommendation, City Council, by a vote of 4 to 3, passed an ordinance accepting the Fairbanks bid for City's RICE NESHAP project.

### CSE's Challenge to City's Decision

Brannum, a property owner and taxpayer in Poplar Bluff, and Browning, a business owner and taxpayer in Poplar Bluff, along with CSE, filed a joint petition with the Circuit Court of Butler County seeking relief from City's decision. The petition sought a declaratory judgment, preliminary injunction, writ of prohibition, and a writ of mandamus.[5] On December 20, 2013, the case was tried. On January 16, 2014, the trial court entered its judgment in favor of City and against plaintiffs on all issues stating:

---

[5] We note that our courts have discouraged such double-barreled petitions for both writs of prohibition and mandamus, or joining a request for a writ of prohibition with any other action. *See* § 530.040.1 RSMo (2000) ("Applications for the remedy of prohibition shall not be joined with any other or different cause of action . . . ."); *State ex rel. Mack v. Scott*, 235 S.W.2d 106, 109 (Mo.App. ST.L.D. 1950).

4

The [c]ourt finds that there has been no evidence presented by Plaintiffs to support their allegations that the decision of the City Council in awarding the RICE NESHAP bid to [Fairbanks] rather than [CSE] was an abuse of discretion. It is not the role of this [c]ourt to substitute its judgment for that of a legislative body such as the City Council absent such an abuse. The law is clear that a public authority is vested with wide discretion and that its decision, when made honestly and in good faith, will not be interfered with by the [c]ourt, even if the [c]ourt disagrees or finds the decision to be erroneous. . . . The Plaintiffs have failed to meet their burden to show that the City's decision was arbitrary and capricious or that it acted in bad faith.

This appeal followed.

In CSE's sole point on appeal, CSE contends the trial court erred in denying the petition for mandamus because mandamus was an appropriate remedy to correct or control City's passage of an ordinance accepting Fairbanks' bid for the RICE NESHAP project. City contends the trial court's denial of mandamus was proper in that City Council's passage of the ordinance was not arbitrary, capricious, or in bad faith, and there was no evidence of abuse or manifest injustice.

However, before we begin our analysis, we are obligated to determine whether CSE has standing to bring this appeal.

### CSE Has No Standing

The parties do not raise the issue of standing. Nevertheless, "[c]ourts have a duty to determine if a party has standing prior to addressing the substantive issues of the case. For this reason, [a challenge to] standing cannot be waived." **CACH, LLC v. Askew**, 358 S.W.3d 58, 61 (Mo. banc 2012) (quoting **Farmer v. Kinder**, 89 S.W.3d 447, 451 (Mo. banc 2002)). A party seeking relief has the burden to establish that it has standing to maintain its claim. **Borges v. Missouri Public Entity Risk Management Fund**, 358 S.W.3d 177, 181 (Mo.App. W.D. 2012).

Whether CSE has standing is an issue of law we review *de novo*. **Manzara v. State**, 343 S.W.3d 656, 659 (Mo. banc 2011). In making this determination, we must rely on the evidence

5

adduced at trial. To that end, we "defer to the trial court's implicit determinations of credibility, view the evidence and permissible inferences in the light most favorable to the judgment, and disregard all contrary evidence and inferences." ***State ex rel. Lupo v. City of Wentzville***, 886 S.W.2d 727, 729 (Mo.App. E.D. 1994).

Ordinarily, "a disappointed bidder competing for a government contract does not have a special pecuniary interest in the award of the contract to it, and therefore generally lacks standing to challenge the award of the contract to another bidder." ***Public Commc'ns Servs., Inc. v. Simmons***, 409 S.W.3d 538, 546 (Mo.App. W.D. 2013). Our Supreme Court has explained that

> [t]his is so for two reasons: (1) Because the advertisement was not an offer of a contract, but an offer to receive proposals for a contract, and (2) because the statute requiring that contracts be let to the lowest and best bidder was designed for the benefit and protection of the public and not the bidders.

***State ex rel. Johnson v. Sevier***, 98 S.W.2d 677, 679 (Mo. banc 1936) (internal quotation and citation omitted).

Only in select circumstances have our courts recognized a losing bidder's standing to challenge the award of a public contract through the extraordinary writ of mandamus: (1) where a public entity's bidding procedure did not permit all bidders to compete on equal terms; or (2) where the lowest bid is rejected "fraudulently, corruptly, capriciously or without reason." ***Simmons***, 409 S.W.3d at 546 (internal quotation and citation omitted).

While we review issues of law *de novo*, it is apparent that the trial court was well aware of this principle, accurately noting in its findings of fact and conclusions of law:

> 33. [A]n unsuccessful bidder has standing to challenge a contract award under Missouri law 'if the bidding procedure did not permit all bidders to compete on equal terms.' ***Metro.Exp. Servs., Inc. vs. City of Kansas City***, 23 F.3d 1367, 1371 (8th Cir. 1994).

6

34. An award may be challenged by a taxpayer whose taxes contribute to the public fund involved. *E. Mo. Laborers District Council v. St. Louis County*, 781 S.W.2d 43 (Mo. banc. 1989).

35. The rejection of the lowest bid must not be made fraudulently, corruptly, capriciously or without reason. The officials must exercise and observe good faith and accord all bidders just consideration, avoiding favoritism and corruption. If any of these standards are violated the public, as the real, moving party, may bring mandamus to enforce cancellation of the contract and its award to the lowest responsible bidder. *LaMar Const. Co. vs. Holt County, R-II School Dist.*, 542 S.W.2d 568, 571 (Mo.App. 1976).

(Quoted as written by the trial court).

Losing-bidder standing requirements and the elements a losing bidder must prove to show his qualification for mandamus, are one in the same. *See Simmons*, 409 S.W.3d at 546.

"The law of mandamus is well settled. Mandamus is a discretionary writ, and there is no right to have the writ issued." *State ex rel. Missouri Growth Ass'n v. State Tax Comm'n*, 998 S.W.2d 786, 788 (Mo. banc 1999). Courts have reserved their right to decline to exercise this most "drastic[,] . . . raw [exercise of] judicial power" in a court's remedial toolbox, despite a petitioner's qualification, where issuing the writ would be futile or otherwise inadvisable. *State ex rel. Kelley v. Mitchell*, 595 S.W.2d 261, 266-67 (Mo. banc 1980); *see, e.g.*, *State ex rel. Hermitage R-IV Sch. Dist. v. Hickory County R-I School Dist.*, 558 S.W.2d 667, 670 (Mo. banc 1977).

"To be entitled to a writ, 'a litigant asking relief by mandamus must allege and prove that he has a clear, unequivocal, specific right to a thing claimed.'" *U.S. Dep't. of Veterans Affairs v. Boresi*, 396 S.W.3d 356, 359 (Mo. banc 2013) (quoting *State ex rel. Office of Pub. Counsel v. Pub. Serv. Comm'n of State*, 236 S.W.3d 632, 635 (Mo. banc 2007)). The "writ of mandamus is issued to compel the performance of a ministerial duty that one charged with the duty has refused to perform." *Office of Pub. Counsel*, 236 S.W.3d at 635 (internal quotation and citation

7

omitted).  "The purpose of the writ is to execute, not adjudicate. . . .  [M]andamus cannot be used to control the judgment or discretion of a public official[,]" nor can the writ be used to control a legislative act.  *See Growth Ass'n*, 998 S.W.2d at 788 (internal quotation and citations omitted); ***State ex rel. Bd. of Health Center Trustees of Clay County v. County Comm'n of Clay County***, 896 S.W.2d 627, 631 (Mo. banc 1995).  Nevertheless, "if the respondent's actions are wrong as a matter of law, then he or she has abused any discretion he or she may have had, and mandamus is appropriate."  ***State ex rel. Valentine v. Orr***, 366 S.W.3d 534, 538 (Mo. banc 2012).

### *CSE Had Fair Opportunity to Be Awarded Contract*

CSE argues that it was not given a fair opportunity to be awarded the contract for the RICE NESHAP project.[6]  However, CSE failed to satisfy its burden to show that it has standing to challenge the award of the contract to Fairbanks.  Therefore, CSE fails on the merits, as well as in its standing on this appeal.

CSE's argument directs us to no evidence in the record that supports its claim to standing based on City's alleged failure to provide a fair opportunity to be awarded the RICE NESHAP project.  The trial court could rightly find, from the evidence in the record, that City "exercise[d] and observe[d] good faith and accord[ed] all bidders just consideration," and that there was no "favoritism or corruption."  ***Simmons***, 409 S.W.3d at 546.  We also find that CSE's bid was not rejected "fraudulently, corruptly, capriciously, or without reason."  ***Id.***  Therefore, the record supports that CSE failed to satisfy its burden to show that it has standing to challenge the award of the contract, and that it lacks standing to appeal the trial court's denial of its petition for writ of mandamus.

---

[6] CSE also suggests in the body of its argument that the facts in this case "raise the *appearance* of fraud and undue influence," and that the acceptance of the Fairbanks bid would impose undue or excessive costs on City taxpayers. (Emphasis added).  As neither of these claims, even if supported by the record, would provide a basis for standing for CSE, we need not address them here.  *See **Simmons***, 409 S.W.3d at 546.

The trial court's judgment denying CSE's petition for writ of mandamus is affirmed.

WILLIAM W. FRANCIS, JR., P.J./C.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - Concurs

DANIEL E. SCOTT, J. - Concurs in Separate Concurring Opinion



# Missouri Court of Appeals

## Southern District

### Division One

CHARLES BRANNUM )
and CHRIS BROWNING, )
)
Plaintiffs, )
)
and )
) No. SD33156
CSE ENTERPRISES, LLC, )
) FILED: August 27, 2014
Plaintiff/Appellant, )
)
vs. )
)
CITY OF POPLAR BLUFF, MISSOURI, )
)
Defendant/Respondent. )

## CONCURRING OPINION

I concur in the court's opinion. I write only to note that the trial court expressly found no indication that the City Council's bid decision "amounted to an abuse of discretion, was arbitrary and capricious, or was an exercise of bad faith," and that the plaintiffs failed to meet their burden of proof as to these. Since those findings and the judgment are supported by substantial evidence, are not against the weight of the evidence, and do not misapply or misstate the law, we must affirm. ***Murphy v. Carron***, 536 S.W.2d 30, 32 (Mo. banc 1976).

DANIEL E. SCOTT – CONCURRING OPINION AUTHOR