

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| BYRNE AND JONES ENTERPRISES, INC. D/B/A BYRNE AND JONES CONSTRUCTION, | ) ) ) | No. ED101588 |
| Appellant, | ) ) ) | Appeal from the Circuit Court of Monroe County |
| vs. | ) ) | Honorable Rachel Bringer Shepherd |
| MONROE CITY R-1 SCHOOL DISTRICT, | ) ) ) | |
| Respondent. | ) | Filed: November 12, 2014 |

Byrne & Jones,[1] an unsuccessful bidder on a public-works project, appeals the circuit court's dismissal of its petition for lack of standing. Because Byrne & Jones cannot assert an interest under the relevant competitive-bidding statute, which is for the benefit of the public only, we hold that Byrne & Jones lacks standing to bring its cause of action. We therefore affirm the dismissal of its petition.

### *Factual & Procedural Background*

The Monroe City R-1 School District wished to build a new athletic stadium at the Monroe City High School. Two companies submitted bids for the project: Byrne & Jones and ATG Sports, Inc. The school district awarded the project to ATG Sports.

Two and one-half months later, Byrne & Jones filed its petition in the circuit court requesting the court to enjoin the district from entering into a contract with ATG Sports for the

---

[1] Fully Byrne & Jones Enterprises, Inc. d/b/a Byrne & Jones Construction

design and construction of the stadium project, and to award Byrne & Jones its bid-preparation costs in connection with the project.[2] Byrne & Jones alleged that the bidding procedures used by the school district did not permit all bidders to compete on equal terms and did not give other bidders a fair opportunity to bid against ATG Sports. Byrne & Jones asserted that in accepting the bid from ATG Sports, the school district acted arbitrarily, capriciously, unfairly, and in violation of the competitive-bidding process required by law. Further, Byrne & Jones alleged that in awarding the project to ATG Sports, the school district did not act in good faith, or in the best interest of the public, but acted in collusion with and for the benefit of ATG Sports.

The school district moved to dismiss Byrne & Jones's petition. Citing a long line of Missouri cases, the district asserted that Byrne & Jones lacked standing as an unsuccessful bidder to challenge the award of the contract to ATG Sports because it had no vested or protectable interest in the award of the public-works contract. *State ex rel. Johnson v. Sevier*, 98 S.W.2d 677 (Mo. 1936); *Metcalf & Eddy Servs., Inc. v. City of St. Charles*, 701 S.W.2d 497 (Mo. App. E.D. 1985); and *State ex rel. Page v. Reorganized Sch. Dist. R-VI of Christian Cnty.*, 765 S.W.2d 317 (Mo. App. S.D. 1989). Byrne & Jones, in opposing the motion, cited two cases that recognized standing for the unsuccessful bidder to challenge a contract that was not fairly bid. *Metro. Express Servs., Inc. v. City of Kansas City*, 23 F.3d 1367 (8th Cir. 1994); and *Public Communications Servs., Inc. v. Simmons*, 409 S.W.3d 538 (Mo. App. W.D. 2013). Byrne & Jones also cited out-of-state decisions that allowed an unsuccessful bidder to recover bid-preparation expenses. The circuit court concluded that Byrne & Jones lacked standing and therefore entered judgment sustaining the school district's motion and dismissing the petition. Byrne & Jones appeal the circuit court's ruling.

---

[2] Byrne & Jones also submitted a letter of protest to the school district immediately after being informed that the district had accepted the proposal from ATG Sports for the project

## Discussion

A party must have standing to bring an action in a Missouri court. *Schweich v. Nixon*, 408 S.W.3d 769, 774 (Mo. banc 2013). At its most basic level, standing "simply means that the party or parties seeking relief must have some stake in the litigation." *Lebeau v. Comm'rs of Franklin Cnty., Missouri*, 422 S.W.3d 284, 288 (Mo. banc 2014). A party seeking relief must show that he is sufficiently affected by the challenged action to justify consideration by the court and that the action violates his particular rights and not those of some third party. *Moynihan v. Gunn*, 204 S.W.3d 230, 234 (Mo. App. E.D. 2006). When a party seeks declaratory or injunctive relief, the criterion for standing is whether the plaintiff has a legally-protectable interest at stake. *Battlefield Fire Prot. Dist. v. City of Springfield*, 941 S.W.2d 491, 492 (Mo. banc 1997). A legally-protectable interest exists if the plaintiff is directly and adversely affected by the action in question or if the plaintiff's interest is conferred by statute. *Ste. Genevieve Sch. Dist. R II v. Bd. of Aldermen of City of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. banc 2002). The interest sought to be protected must arguably be within the zone of interests to be protected or regulated by the statute in question. *Harrison v. Monroe Cnty.*, 716 S.W.2d 263, 266 (Mo. banc 1986)(citing *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)). Whether a party has standing is a question of law that we review *de novo*. *Lebeau*, 422 S.W.3d at 288.

Section 177.086, the relevant bidding statute here that sets forth the requirements for a school district's advertising and awarding of contracts for the construction of facilities, states in pertinent part:

> No bids shall be entertained by the school district which are not made in accordance with the specifications furnished by the district and all contracts shall be let to the lowest responsible bidder complying with the terms of the letting, provided that the *district shall have the right to reject any and all bids.*

3

Section 177.086.2 (emphasis added).[3] The last emphasized phrase is key. The statute vests the school board with an absolute right to reject any and all bids. Because of this, rejection of a bid by the school district creates no vested interest or property right in the rejected bidder. *La Mar Const. Co. v. Holt Cnty., R-II Sch. Dist.*, 542 S.W.2d 568, 570 (Mo. App. 1976). Long-recognized is the principle of law that "where a public body reserves the right to reject any and all bids that are submitted to it they are empowered to do just that and by rejecting a bid they create no vested interest or property right in the rejected bidder." *Id.* And indeed, a long and well-established line of Missouri cases holds that an unsuccessful bidder competing for a government contract does not have a special pecuniary interest in the award of a contract to it, and therefore the disappointed bidder cannot state a cause of action challenging the award of the contract to another bidder. *State ex rel. Johnson v. Sevier*, 98 S.W.2d 677 (Mo. 1936); *La Mar Const.*, 542 S.W.2d at 569-70; *Metcalf & Eddy Servs., Inc. v. City of St. Charles*, 701 S.W.2d 497 (Mo. App. E.D. 1985); *State ex rel. Mid-Missouri Limestone, Inc. v. Cnty. of Callaway*, 962 S.W.2d 438 (Mo. App. W.D. 1998). Rejection of a bid does not give the bidder any private right that they can enforce for two reasons: (1) no contract was made; and (2) the legislature enacted the competitive-bidding statutes for the benefit and protection of the public, not the bidders. *Sevier*, 98 S.W.2d at 489; *La Mar Const.*, 542 S.W.2d at 569-70.

---

[3] In full, Section 177.086 provides:

> 1. Any school district authorizing the construction of facilities which may exceed an expenditure of fifteen thousand dollars shall publicly advertise, once a week for two consecutive weeks, in a newspaper of general circulation, qualified pursuant to chapter 493, located within the city in which the school district is located, or if there be no such newspaper, in a qualified newspaper of general circulation in the county, or if there be no such newspaper, in a qualified newspaper of general circulation in an adjoining county, and may advertise in business, trade, or minority newspapers, for bids on said construction.
>
> 2. No bids shall be entertained by the school district which are not made in accordance with the specifications furnished by the district and all contracts shall be let to the lowest responsible bidder complying with the terms of the letting, provided that the district shall have the right to reject any and all bids.
>
> 3. All bids must be submitted sealed and in writing, to be opened publicly at time and place of the district's choosing.

Byrne & Jones does not assert a contractual right.[4] Instead, the company sued to enforce and protect an alleged private right, as a participant in the Missouri public-contract bidding process. This position is untenable, however, because Section 177.086 is designed for the benefit and protection of the public, not the bidders. *La Mar Const.*, 542 S.W.2d at 570; *see also Sevier*, 98 S.W.2d at 679 (statute that required government contracts be let to the "lowest and best" bidder designed for benefit and protection of public, not bidders). The legislature did not design Section 177.086 to shelter the rights of individuals, such as the unsuccessful bidder. *La Mar Const.*, 542 S.W.2d at 570. Long-recognized is this policy of serving and protecting the public. Our courts and scholars alike have explained that legislative provisions such as Section 177.086, which require public works to be awarded upon a public letting to the lowest responsible bidder:

> are for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts, and to secure the best work or supplies at the lowest price practicable, and are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest.

---

[4] Nor could Byrne & Jones assert a contractual right. The school district's right to reject any and all bids makes clear that a district's advertisement requesting bids is merely an invitation to receive proposals for a contract. *Sevier*, 98 S.W.2d at 489; *Anderson v. Bd., etc., of Public Schs.*, 27 S.W.610, 611 (Mo. 1894); *La Mar Const.*, 542 S.W.2d at 570. The advertisement is not an offer of a contract. *Sevier*, 98 S.W.2d at 489; *Anderson*, 27 S.W. at 611. An invitation to bid under Section 177.086, when the district has the right to reject any and all bids, does not contemplate an acceptance, in a contractual sense, by a submission of a bid in response to that invitation. *La Mar Const.*, 542 S.W.2d at 569-70. Submission of a bid for public work in response to an invitation constitutes no more than an offer, on the part of the bidder, to enter into a contract for the work. *Anderson*, 27 S.W. at 611 (noting that a bid is a proposal to build); *La Mar Const.*, 542 S.W.2d at 570; *see also M.A. Stephen Const. Co., Inc. v. Borough of Rumson*, 308 A.2d 380, 383 (N.J. Super. Ct. App. Div. 1973)(citing 1 Williston on Contracts (3d ed. 1957), s 31 at 82)). Submission of the bid does not and cannot ripen into a contract unless and until the public authority accepts the offer. *Stephen Const.*, 308 A.2d at 383 (citing Williston, *supra*); *see also Lawrence Brunoli, Inc. v. Town of Branford*, 722 A.2d 271, 273 (Conn. 1999). "In short, the submission of a bid, without more, creates no rights in the bidder." *Stephen Const.*, 308 A.2d at 383 (citing Williston, *supra*); *La Mar Const.*, 542 S.W.2d at 570. The school district here did not accept Byrne & Jones's bid. Thus, no contract exists between the school district and Byrne & Jones. *See La Mar Const.*, 542 S.W.2d at 570. Because Byrne & Jones, as the unsuccessful bidder, obtained no contractual rights, it must derive its interest and standing to bring this action from some other source.

*O. J. Photo Supply, Inc. v. McNary*, 611 S.W.2d 246, 248 (Mo. App. E.D. 1980)(quoting 10 McQuillin, Municipal Corporations (3d Ed.) s 29.29); *see also Wring v. City of Jefferson City*, 413 S.W.2d 292, 299 (Mo. 1967).

Byrne & Jones, however, did not bring suit as a taxpayer or as a representative of other taxpayers.[5] Byrne & Jones filed suit in its name alone, and the petition contains no allegations that the company brought suit on behalf of the public or to protect the interests of the public. *See Sevier*, 98 S.W.2d at 679; *La Mar Const.*, 542 S.W.2d at 570. Instead, the allegations of the petition, together with the prayer for relief, which in part requested that monetary damages be awarded to Byrne & Jones, clearly demonstrate that the company sought redress for private losses and to protect an alleged private right. Specifically, Byrne & Jones brought suit to enforce and protect its alleged right, as a participant in Missouri's public-bidding process, to compete for public contracts in a field where no favoritism is shown and all bidders are given a fair opportunity to provide the public with the best service possible. The company contends the district owed a duty to Byrne & Jones, as a bidder, "to give it the opportunity to compete for the contract on a level field where no favoritism is shown or may be shown to other bidders." The company declares it has standing "to challenge the district's bidding process and award of its contract, as a participant in public competitive bidding serving the public's interest, by compelling the lax or erring district to perform the public duty imposed upon it to provide all bidders with a fair opportunity to bid."

It is said, in the early jurisprudence of this State, that public officials, armed with the absolute right to reject any or all bids, may do so for any cause they may deem satisfactory, or

---

[5] In *Eastern Missouri Laborers Dist. Council v. St. Louis Cnty.*, 781 S.W.2d 43, 46-47 (Mo. banc 1989), our Missouri Supreme Court established the right of a taxpayer to bring an action to enjoin the illegal expenditure of public funds under contracts entered into by public officials when the taxpayer can demonstrate "a direct expenditure of funds generated through taxation." *State ex rel. Stricker v. Hanson*, 858 S.W.2d 771, 775 (Mo. App. W.D. 1993).

even without any assignable cause, and no cause of action arises to the disappointed bidder because of the motive that led to the rejection of their bid. *Anderson*, 27 S.W. at 612; *Sevier*, 98 S.W.2d at 680. It is also said, in more recent times, that public officials, such as the school-district officials here, must exercise their discretion responsibly, and that they must exercise and observe good faith and accord all bidders just consideration, avoiding favoritism and corruption. *La Mar Const.*, 542 S.W.2d at 571. Rejection of the lowest bid must not be made "fraudulently, corruptly, capriciously or without reason." *Id.*

Byrne & Jones contends it derives a right flowing from these obligations. We are not persuaded. The company relies upon *Hanson* for the proposition that competitive-bidding procedures for public contracts should ensure that all who wish to bid shall have a fair opportunity to compete in a field where no favoritism is shown or may be shown to other contestants. *State ex rel. Stricker v. Hanson*, 858 S.W.2d 771 (Mo. App. W.D. 1993). And the company relies upon *KAT Excavation* for the principle that a public entity, in awarding a public-works contract to the lowest and best bidder, must exercise its discretion reasonably, in good faith, in the interest of the public, without collusion or fraud, nor corruptly, nor from motives of personal favoritism or ill will. *KAT Excavation, Inc. v. City of Belton*, 996 S.W.2d 649 (Mo. App. W.D. 1999). These cases do stand for these propositions. And we do not quibble with the propositions, but instead reaffirm that the public authority must exercise its broad discretion soundly, reasonably, and in good faith. The real question at hand is to whom these obligations and duties run. Byrne & Jones believes it is to the bidders. We do not.

Given that Section 177.086 and the other competitive-bidding statutes are for the benefit of property owners and taxpayers, and not for the benefit or enrichment of bidders, we conclude that these obligations are necessarily imposed for the public good, not for the benefit of the

7

bidders. *See Stephen Const.*, 308 A.2d at 383-84; *La Mar*, 542 S.W.2d at 570. The public official, in choosing or rejecting a bid, is acting on behalf of the public whom he represents. As such, the official owes a duty to the public to exercise discretion honestly and in good faith, or as directed by statute, to make his award to the lowest responsible bidder whose bid is most advantageous to the public. *Stephen Const.*, 308 A.2d at 383-84. In sum, the duty owing by a public official, to accept bid proposals that best serve the public interest, by its very nature runs to the members of the public, and to them alone. It does not run to the other bidders, and does not create any right or rights in those bidders. *Id.* Indeed, this is even reflected in the relied-upon cases of *Hanson* and *KAT Excavation*. Although standing for the proposition that public authorities must act responsibly and fairly, a plaintiff in both cases was a taxpayer, upon whom standing was predicated, and to whom these obligations necessarily flow.[6] The cases do not stand for the proposition, urged by Byrne & Jones, that because of these obligations, a public authority owes a duty to bidders, vesting the bidders with a right and standing by virtue of their participation in the bidding process.

Byrne & Jones cite *Metropolitan Express Services* and *Simmons* for the proposition that unsuccessful bidders have standing to challenge a contract that is not fairly bid. *Metro. Express Servs., Inc. v. City of Kansas City*, 23 F.3d 1367 (8th Cir. 1994); *Public Communications Servs., Inc. v. Simmons*, 409 S.W.3d 538 (Mo. App. W.D. 2013). We acknowledge these cases, but conclude they were wrongly decided.

*Metropolitan Express Services*, a federal decision, is the first case that deviated from longstanding jurisprudence. There the federal court, applying Missouri law, concluded that an unsuccessful bidder that was denied a fair opportunity to bid on a public contract is within the

[6] Indeed, the Court in *Hanson* explicitly stated that the question of standing as a participant in a public-contract bidding process was of no consequence and the court did not address the matter. *Hanson*, 858 S.W.2d at 775.

8

zone of interests to be protected by competitive-bidding requirements. *Metro. Express Servs.*, 23 F.3d at 1371. We disagree. Again, these competitive-bidding statutes are for the benefit of property owners and taxpayers, not for the benefit or enrichment of bidders. A company that seeks to protect and potentially benefit from its bid does not fall within the zone of protection envisioned by the statute. In reaching its conclusion, the federal court relied on *Hanson* for the proposition that competitive-bidding procedures for public contracts should ensure that all who may wish to bid shall have a fair opportunity to compete in a field where no favoritism is shown or may be shown to other contestants. *Id.* (citing *Hanson*, 858 S.W.2d at 778). The court's reliance was misplaced. As we have noted, one of the plaintiffs in *Hanson* was a taxpayer, to whom the obligation of fair dealing naturally ran. No such taxpayer existed in *Metropolitan Express Services*, to whom the obligation of fair dealing might run.

Of course, we are not bound to follow this federal decision. But the Western District, in *Simmons*, imported the federal court's flawed reasoning and decision squarely into Missouri jurisprudence. In *Simmons*, an unsuccessful bidder for a government contract brought suit alleging that the government body acted arbitrarily, capriciously, and unfairly in awarding the contract to another bidder. *Simmons*, 409 S.W.3d at 543. The Western District, relying on *Metropolitan Express Services*, concluded that the unsuccessful bidder had standing because it challenged the fairness and lawfulness of the bidding process. *Id.* at 547-48. The Court acknowledged the general, longstanding rule refusing to afford losing bidders standing to challenge the award of government contracts, but nevertheless found standing for the private company, based on the holding in *Metropolitan Express Services*, and based on the premise that the public has standing to challenge a contract award when the contracting authority exercised its discretion unlawfully or capriciously. *Id.*

9

Most recently, the Southern District, also relying upon *Metropolitan Express Services*, joined the Western District in recognizing standing for a losing bidder to challenge the award of public contract in select circumstances where a public entity's bidding procedure did not permit all bidders to compete on equal terms, or when the public entity rejects the lowest bid fraudulently, corruptly, capriciously or without reason. *Brannum v. City of Poplar Bluff*, 439 S.W.3d 825, 830 (Mo. App. S.D. 2014).[7]

But, again, these bidding statutes are not for the benefit of the bidders. That the public has standing to challenge a contract not fairly bid does not mean the private bidder has the same right. In challenging the bidding process, the bidders are serving their own interests. Here, Byrne & Jones sought to protect its interest to submit for consideration a potentially winning bid, and if unsuccessful in that bid, damages in the form of bid-preparation costs. Byrne & Jones posits that they are serving the public's interest by compelling the district to perform its duty. But our Court has already rejected the notion that the public's interest can be protected by sanctioning a cause of action for the unsuccessful bidder. *La Mar Const.*, 542 S.W.2d at 571. Moreover, standing must be predicated on a plaintiff's particular rights and not those of some third party. We find no right or interest inuring to bidders under the competitive-bidding statutes, such as Section 177.086. And thus, the unsuccessful bidder has no standing under those statutes upon which to base a cause of action, challenging the bidding process.[8]

---

[7] Although recognizing standing for a losing bidder, the court nevertheless held that the bidder there had no standing to bring its appeal. The losing bidder directed the court to no evidence in record that supported its claim to standing based on the city's alleged failure to provide a fair opportunity to be awarded the project. Instead, the evidence supported a finding that the city exercised and observed good faith and accorded all bidders just consideration, that there was no favoritism or corruption, and that the city did not reject the bid fraudulently, corruptly, capriciously, or without reason. *Brannum*, 439 S.W.3d at 831.

[8] We note that that the actions of public officials are not left unchecked. If officials violate any of the standards and obligations imposed upon them in awarding public contracts, the public may bring a mandamus action. *La Mar Const.*, 542 S.W.2d at 571. We acknowledge that a member of the public may lack resources to bring such a suit, and that the threat of a taxpayer suit may not deter an unscrupulous public official. But, given the policy underlying

This brings us to Byrne & Jones's claim for bid-preparation costs. This claim also fails. The company acknowledges that no Missouri authority exists allowing for recovery of bid-preparation costs. Awarding the unsuccessful bidder his bid-preparation costs, when taken to its logical conclusion, serves only to hurt, not protect, the public. Recovery of bidding costs is clearly a private pecuniary interest. If an unsuccessful bidder may recover its bid-preparation costs, the government body would then have to pay both the unsuccessful bidder and the contractor who completes the work. Awarding the unsuccessful bidder its bid-preparation costs would thus only add to the public's cost for the project. This is not a means of protecting the public. *See La Mar Const.*, 542 S.W.2d at 571; *Stephen Const.*, 308 A.2d at 385. Allowing such recovery, to the benefit of the bidder, at the expense of the public, runs completely counter to the purpose and underlying policy of the bidding statutes. We thus hold that the unsuccessful bidder may not recover its bid-preparation costs. After all, if the public official improperly discharges his duties, it is the public that is wronged and not the bidder.

Byrne & Jones lacks standing to bring its cause of action. We therefore affirm the circuit court's judgment that dismissed the company's action.

LAWRENCE E. MOONEY, PRESIDING JUDGE

MARY K. HOFF, J., and
PHILIP M. HESS, concur.

---

the current bidding statutes, if a remedy is to be provided for the unsuccessful bidder, that remedy is for the legislature or our Supreme Court to devise.