

# SUPREME COURT OF MISSOURI
## en banc

BYRNE & JONES ENTERPRISES, INC.　　　)
d/b/a BYRNE AND JONES　　　　　　　　　)
CONSTRUCTION,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Appellant,　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　　　)　　　No. SC94680
　　　　　　　　　　　　　　　　　　　　　　)
MONROE CITY R-1 SCHOOL DISTRICT,　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Respondent.　　　　　)

### APPEAL FROM THE CIRCUIT COURT OF MONROE COUNTY
The Honorable Rachel Bringer Shepherd, Judge

### *Opinion issued July 26, 2016*

Byrne & Jones Enterprises, Inc. d/b/a Byrne and Jones Construction filed an action

against Monroe City R-1 School District and members of the Board of Education of

Monroe City R-1 School District (collectively, the school district) alleging that it was

denied a fair and equal opportunity to compete in the bidding process for a public works

contract to build an athletics stadium because of collusion and favoritism between the

school district and another bidder, ATG Sports, Inc.　The trial court dismissed Byrne &

Jones' petition after finding that Byrne & Jones, as an unsuccessful bidder, lacked

standing to challenge the award of the contract because it did not bring the action as a

taxpayer or in the interest of the public.　Byrne & Jones appealed, asserting that it has

standing to challenge the school district's award of the contract because, as a participant

in the competitive bidding process, it has a right to a fair and equal opportunity to compete for public contracts.

The trial court erred in dismissing Byrne & Jones' petition because competitive bidding procedures for public contracts ensure that all who wish to bid have a fair and equal opportunity to compete in a field without favoritism or collusion. Unsuccessful bidders, therefore, have an interest in having a fair and equal opportunity to compete in the bidding process. Accordingly, because Byrne & Jones alleged that it was denied a fair and equal opportunity to compete in the bidding process for the athletics stadium, Byrne & Jones had standing to challenge the award of the contract to ATG Sports.

Nevertheless, the trial court did not err in dismissing Byrne & Jones' petition because Byrne & Jones is not entitled to the relief requested in its petition. Byrne & Jones' request for injunctive relief is moot in that, at the time of oral argument, the school district had let the contract to ATG Sports, which completed the athletics stadium that is now in use. Furthermore, Byrne & Jones is not entitled to its bid preparation costs because section 177.086.2[1] does not create a cause of action for, or authorize the recovery of, such damages. Accordingly, this Court affirms the trial court's judgment dismissing Byrne & Jones' petition.

---

[1] Unless otherwise noted, all statutory citations are to RSMo Supp. 2013.

**Factual and Procedural Background**[2]

In 2013, the school district began planning to build a new athletics stadium at Monroe City High School. The school district subsequently contacted ATG Sports about the proposed stadium and requested ATG Sports' assistance in designing the project. Throughout 2013, the school district emailed and had meetings with ATG Sports about the stadium project. Over the course of its communications with the school district, ATG Sports submitted unsealed plans and drawings of the proposed stadium to the school district and drafted the request for proposals that the school district later used to solicit bids for the project.

In the request for proposals, the school district sought base bids on the project as well as bids on 13 possible alternates or enhancements to the project. Byrne & Jones and ATG Sports were the only bidders on the project.

Byrne & Jones submitted the lowest base bid as well as the lowest total bid when factoring in all 13 of the proposed enhancements to the project. When the school district selected only seven of the 13 alternates, however, ATG Sports' total bid was the lowest. In January 2014, the school district awarded the contract to ATG Sports.

On March 25, 2014, Byrne & Jones filed a declaratory judgment action against the school district. In count I of its petition,[3] Byrne & Jones alleged that the bidding

---

[2] When reviewing a motion to dismiss, this Court assumes that the facts alleged in the petition are true. *LeBeau v. Commissioners of Franklin Cnty., Missouri*, 422 S.W.3d 284, 288 (Mo. banc 2014).

[3] Byrne & Jones asserted two other claims in its petition that were also dismissed by the trial court. On appeal, Byrne & Jones does not contest the dismissal of its other two claims, so this Court does not address them.

procedures utilized by the school district did not allow all bidders a fair opportunity to compete on equal terms with ATG Sports. Byrne & Jones further alleged that the school district violated the competitive bidding process prescribed by law when it colluded with and acted with favoritism toward ATG Sports. In its prayer for relief, Byrne & Jones sought to enjoin the school district from entering into any contract with ATG Sports and requested an award of its costs, attorney fees, and bid preparation costs in connection with the project.

The school district, subsequently, filed a motion to dismiss the petition. In its motion, the school district claimed that, as an unsuccessful bidder, Byrne & Jones lacked standing to challenge the award of the contract to another bidder because Byrne & Jones had no vested or protectable interest in the award of the contract. Byrne & Jones filed suggestions in opposition arguing that an unsuccessful bidder has standing to challenge a contract if the bidding procedures did not afford all bidders a fair and equal opportunity to compete.

On May 22, 2014, the trial court entered its judgment sustaining the school district's motion to dismiss. The trial court determined that a low bidder has no standing under section 177.086, the school district's competitive bidding procedures, to challenge the award of a contract to another bidder because the statute is clearly intended to safeguard the interest of the public, not the individual bidders. Therefore, the trial court concluded that Byrne & Jones lacked standing in that it was bringing the action as an unsuccessful bidder, not as a representative of Monroe City R-1 School District taxpayers.

4

Byrne & Jones appeals. After an opinion by the court of appeals, the case was transferred to this Court. Mo. Const. art. V, sec. 10.

## Standard of Review

This Court reviews the grant of a motion to dismiss *de novo*. *Ambers-Phillips v. SSM DePaul Health Ctr.*, 459 S.W.3d 901, 905 (Mo. banc 2015). "In reviewing the dismissal of a petition, the sole issue to be decided is whether, after allowing the pleading its broadest intendment, treating all facts alleged as true and construing all allegations favorably to the plaintiff, the plaintiff is entitled to relief." *Doss v. Doss*, 822 S.W.2d 427, 428 (Mo. banc 1992). "This Court must affirm the dismissal if it can be sustained on any ground supported by the motion to dismiss." *Beck v. Fleming*, 165 S.W.3d 156, 158 (Mo. banc 2005).

## Standing of Unsuccessful Bidders

Byrne & Jones argues that it has standing to challenge the award of the contract to ATG Sports because it was denied a fair and equal opportunity to compete in the bidding process. To bring an action in a Missouri court, a party must have standing. *LeBeau v. Commissioners of Franklin Cnty., Missouri*, 422 S.W.3d 284, 288 (Mo. banc 2014). Standing is a threshold issue and "a prerequisite to a court's authority to address substantive issues." *S.C. v. Juvenile Officer*, 474 S.W.3d 160, 163 (Mo. banc 2015). Standing is a necessary component of a justiciable case that must be established prior to adjudication of a case's merits. *Schweich v. Nixon*, 408 S.W.3d 769, 774 (Mo. banc 2013). Moreover, "[s]tanding is an antecedent to the right to relief." *Manzara v. State*, 343 S.W.3d 656, 659 (Mo. banc 2011). Therefore, prior to addressing the merits of

5

Byrne & Jones' claim and whether it was entitled to the requested relief, this Court must first determine whether Byrne & Jones had standing.

"In the context of a declaratory judgment action, the plaintiff must have a legally protectable interest at stake in the outcome of the litigation." *Id.* A plaintiff has a legally protectable interest if "the plaintiff is directly and adversely affected by the action in question or if the plaintiff's interest is conferred by statute." *Id.* (internal quotation omitted). "Missouri requires that a complainant be within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question to bring an action thereunder." *Weber v. St. Louis Cnty.*, 342 S.W.3d 318, 323 (Mo. banc 2011).

Byrne & Jones asserts that it was denied a fair and equal opportunity to compete in the bidding process for the school district's athletics stadium project. Section 177.086 sets out the competitive bidding procedures for all school districts regarding facility construction expenditures. Section 177.086.1 requires school districts constructing facilities that exceed $15 thousand dollars to publicly advertise for bids "once a week for two consecutive weeks, in a newspaper of general circulation . . . located within the city in which the school district is located." All bids submitted to the school district must be sealed and in writing. Section 177.086.3. The school district cannot entertain bids that are not in "accordance with the specifications furnished by the district and all contracts shall be let to the lowest responsible bidder complying with the terms of the letting, provided that the district shall have the right to reject any and all bids." Section 177.086.2. Under this competitive bidding scheme, the school district reserves the right to reject any and all bids, including the lowest bid submitted. *State ex rel. Page v.*

6

*Reorganized Sch. Dist. R-VI of Christian Cnty.*, 765 S.W.2d 317, 321 (Mo. App. 1989); *La Mar Constr. Co. v. Holt Cnty, R-II Sch. Dist.*, 542 S.W.2d 568, 570 (Mo. App. 1976). Nevertheless, "rejection of the lowest bid must not be made fraudulently, corruptly, capriciously or without reason," and "officials must exercise and observe good faith and accord all bidders just consideration, avoiding favoritism and corruption." *La Mar*, 542 S.W.2d at 571.

The trial court determined that Byrne & Jones lacked standing because an unsuccessful bidder has no standing under the competitive bidding procedures set out in section 177.086 to challenge the award of a contract to another bidder. The trial court found that competitive bidding statutes are intended to safeguard the interests of the public; thus, when fraud, corruption, or capriciousness occurs in the bidding process, the public, not the unsuccessful bidder, is the real moving party that is entitled to bring an action to enforce cancellation of the contract.

Generally, Missouri courts have held that an unsuccessful bidder competing for a public contract has no special pecuniary interest in the award of the contract to it and, therefore, lacks standing to challenge the award of the contract to another bidder. *See State ex rel. Johnson v. Sevier*, 98 S.W.2d 677, 681 (Mo. banc 1936); *Page*, 765 S.W.2d at 321; *Metcalf & Eddy Servs., Inc. v. City of St. Charles*, 701 S.W.2d 497, 499 (Mo. App. 1985); *La Mar*, 542 S.W.2d at 570-71. As this Court has explained, an unsuccessful bidder has no interest in having a public contract awarded to it for two reasons:

7

> (1) Because [an] advertisement [is] not an offer of a contract, but an offer to receive proposals for a contract, and (2) because the statute requiring that contracts be let to the lowest and best bidder was designed for the benefit and protection of the public and not the bidders.

*Sevier*, 98 S.W.2d at 679 (internal quotation omitted).

Recently, the United States Court of Appeals for the Eighth Circuit and the Missouri Court of Appeals acknowledged these general principles regarding unsuccessful bidder standing; nevertheless, they have concluded that, under Missouri law, unsuccessful bidders that challenge the award of the contract to another bidder on the basis that they were denied a fair and equal opportunity to compete do have standing to assert their claims. *See Metro. Express Servs., Inc. v. City of Kansas City, Mo*, 23 F.3d 1367 (8th Cir. 1994); *Brannum v. City of Poplar Bluff*, 439 S.W.3d 825, 829 (Mo. App. 2014); *Pub. Commc'ns Servs., Inc. v. Simmons*, 409 S.W.3d 538, 547 (Mo. App. 2013).

In *Metropolitan Express*, 23 F.3d at 1371, a potential bidder alleged that the city's disregard of the proper competitive bidding process denied the potential bidder an opportunity to bid on a contract for an airport concession agreement. The federal district court concluded that the potential bidder lacked standing based on Missouri cases denying standing to unsuccessful bidders. *Id.* at 1370. In reversing the district court's judgment, the Eighth Circuit found that Missouri courts had yet to decide whether an unsuccessful bidder has standing to challenge a contract when the public contract allegedly was not awarded in accordance with competitive bidding procedures. *Id.* at 1371. The Eighth Circuit went on to explain that most jurisdictions have found that "an unsuccessful bidder has standing to challenge a contract if the bidding procedure did not

8

permit all bidders to compete on equal terms." *Id.* The Eighth Circuit then examined Missouri's standing requirements and noted that Missouri courts have held that "competitive bidding procedures for public contracts should ensure that all who may wish to bid shall have a fair opportunity to compete in a field where no favoritism is shown or may be shown to other contestants." *Id.* (internal quotation omitted). Based on such reasoning, the Eighth Circuit concluded that "an unsuccessful bidder that was denied a fair opportunity to bid on a public contract is within the zone of interests to be protected by competitive bidding requirements" and, therefore, "has standing to challenge a contract that was not fairly bid." *Id.*

Relying on *Metropolitan Express*, the Missouri Court of Appeals in *Simmons*, 409 S.W.3d at 547, held that an unsuccessful bidder that raised claims regarding the fairness and lawfulness of the bidding process had standing to challenge the award of a public contract. In *Simmons*, an unsuccessful bidder filed suit after the state awarded a contract for providing inmates with telephone services to another bidder. *Id.* at 540-41. On appeal, the successful bidder argued that the unsuccessful bidder lacked standing to file the suit. *Id.* at 545. The court of appeals acknowledged that an unsuccessful bidder "generally lacks standing to challenge the award of [a] contract to another bidder." *Id.* at 546. Despite this general rule, however, the court favorably cited *Metropolitan Express* for the proposition that "an unsuccessful bidder has standing to challenge a contract award under Missouri law if the bidding procedure did not permit all bidders to compete on equal terms." *Id.* (internal quotation omitted). The court then concluded that the unsuccessful bidder had standing because it alleged that it had been denied a fair

9

opportunity to bid and, therefore, had challenged the fairness and lawfulness of the bidding process.[4]  *Id.* at 547.

Following *Simmons*, the Missouri Court of Appeals in *Brannum*, 439 S.W.3d at 830, again recognized that unsuccessful bidders have standing to challenge the award of a contract if all bidders were not permitted to compete on equal terms.  In doing so, the court stated that, ordinarily, an unsuccessful bidder "does not have a special pecuniary interest in the award of [a] contract to it, and therefore generally lacks standing to challenge the award of the contract to another bidder."  *Id.* at 829 (internal quotation omitted).  Relying on *Simmons*, however, the court found that, under limited circumstances, Missouri courts have "recognized a losing bidder's standing to challenge the award of a public contract . . . where a public entity's bidding procedure did not permit all bidders to compete on equal terms; or . . . where the lowest bid is rejected fraudulently, corruptly, capriciously, or without reason."  *Id.* at 830 (internal quotation omitted).[5]

_____

[4] While the trial court acknowledged the holding in *Simmons* that unsuccessful bidders have standing under limited circumstances, it found the present case distinguishable in that *Simmons* did not involve the application or interpretation of the competitive bidding scheme set out in section 177.086.2.  The court's holding in *Simmons*, however, was not premised on the competitive bidding statute at issue.  Rather, as previously explained, the court in *Simmons* found the unsuccessful bidder had standing because the unsuccessful bidder alleged it was denied a fair and equal opportunity to compete in the bidding process.  409 S.W.3d at 547.

[5] After explaining that unsuccessful bidders have standing to challenge the award of a public contract under limited circumstances, the court of appeals in *Brannum* went on to find that the unsuccessful bidder *lacked standing* because the record established that the unsuccessful bidder had a fair and equal opportunity to compete.  439 S.W.3d at 831.  In doing so, the court erroneously conflated the issue of standing with deciding the merits of the unsuccessful bidder's claim that it had been denied a fair and equal opportunity to

10

As this recent precedent establishes, an unsuccessful bidder typically has no interest in having a public contract awarded to it and, therefore, lacks standing when challenging the award of a public contract to another bidder on such grounds. Nonetheless, one purpose of competitive bidding statutes is to ensure "that all who may wish to bid shall have a fair opportunity to compete in a field where no favoritism is shown or may be shown to other contestants." *City of Maryville ex rel. Citizens' Nat'l Bank of Des Moines, Iowa v. Lippman*, 132 S.W. 47, 48 (Mo. App. 1910). "It is quite as great a stimulus to real competition for those engaged in the contracting business who are honest to feel that all will have a fair field and that no favor will be shown[.]" *Id.* Accordingly, this Court is persuaded that bidders have a legally protectable interest in a fair and equal bidding process and are within the zone of interests that competitive bidding statutes seek to regulate. An unsuccessful bidder, therefore, has standing to challenge the award of a public contract to another bidder on grounds that it was denied a fair and equal opportunity to compete in the bidding process. *Brannum*, 439 S.W.3d at 830; *Simmons*, 409 S.W.3d at 547.

The school district argues that *Simmons* and *Brannum* should not be followed because they conflict with prior precedent in *Sevier* and *La Mar* that only taxpayers have standing to challenge the award of a public contract because the purpose of public bidding laws is to protect the public. The holdings of *Sevier* and *La Mar*, however, do not conflict with the proposition that unsuccessful bidders have standing to challenge a

compete. *Id.* at 831. The court in *Brannum*, therefore, incorrectly found that the unsuccessful bidder lacked standing. It correctly found that the unsuccessful bidder's claim failed on its merits.

11

public contract on grounds that they were denied a fair and equal opportunity to compete in the bidding process.

In *Sevier*, an unsuccessful bidder sought a writ of mandamus compelling the award of a public contract to it because it was the lowest bidder. 98 S.W.2d at 678. In finding that the unsuccessful bidder was not entitled to mandamus relief, this Court held that an unsuccessful bidder lacked a private pecuniary interest in the contract and, therefore, could not bring an action to compel the awarding of a public contract to it. *Id.* at 681. Likewise, the unsuccessful bidder in *La Mar* challenged the award of a public contract on grounds that, as the lowest responsible bidder, it was entitled to the contract. 542 S.W.2d at 570. In affirming the dismissal of the action, the court of appeals held that the unsuccessful bidder was not deprived of anything to which it was legally entitled and, therefore, failed to state a cause of action. *Id.* at 570-71. Accordingly, *Sevier* and *La Mar* stand for the proposition that an unsuccessful bidder cannot bring an action to compel the awarding of a public contract to it because the unsuccessful bidder has no clear, legal right or interest in having a competitively bid public contract awarded to it. Therefore, the holdings in *Sevier* and *La Mar* do not conflict with *Simmons* and *Brannum,* in which the unsuccessful bidders sought a fair and equal opportunity to compete in the bidding process.

The school district argues that, regardless of whether Byrne & Jones sought the award of the contract, Byrne & Jones still lacks standing because it did not bring the action in the interest of the public or as a taxpayer. In support of its argument, the school district relies upon the following language in *La Mar*:

12

> The rejection of the lowest bid must not be made fraudulently, corruptly, capriciously or without reason. The officials must exercise and observe good faith and accord all bidders just consideration, avoiding favoritism and corruption. If any of these standards are violated the public, as the real, moving party, may bring mandamus to enforce cancellation of the contract and its award to the lowest responsible bidder.

*Id.* at 571. The school district also points to language in *Sevier* that if a public contract is not entered into in good faith, "the law affords taxpayers a complete remedy for its cancellation, but private individuals, as unsuccessful bidders, cannot maintain a suit in their own behalf to cancel the award as made and compel the awarding of the contract to them." 98 S.W.2d at 681.

Judicial decisions "must be construed with reference to the facts and issues of the particular case, and that the authority of the decision as a precedent is limited to those points of law which are raised by the record, considered by the court, and necessary to a decision." *Parker v. Bruner*, 683 S.W.2d 265, 265 (Mo. banc 1985) (internal quotation omitted). Although the school district reads the language in *Sevier* and *La Mar* broadly to mean that only taxpayers have standing to challenge the award of a public contract, such language was used in the context of dispelling the notion that the unsuccessful bidder, as the lowest or best bidder, has some statutory right or interest in having the contract awarded to it. If the courts' language was intended to address circumstances beyond the facts of those cases, it is dicta. *Id.* Here, Byrne & Jones is not alleging that it has some legal right or interest in having the contract awarded to it. It contests the award of the contract on grounds that, due to collusion and favoritism, it was not afforded a fair and equal opportunity to compete in the bidding process. Such arguments were not

13

raised in *Sevier* or *La Mar,* nor has the school district cited any case from this Court finding that an unsuccessful bidder lacked standing to challenge the bidding process and the contract awarded therefrom on such grounds.

Accordingly, all bidders have a legally protectable interest in a fair and equal bidding process and are within the zone of interests that the school district's competitive bidding statutes seek to regulate in that competitive bidding statutes are designed to ensure that all bidders have a fair and equal opportunity to compete in the bidding process. *See Brannum*, 439 S.W.3d at 830; *Simmons*, 409 S.W.3d at 546-47; *City of Maryville*, 132 S.W. at 48. Therefore, unsuccessful bidders that are denied a fair and equal opportunity to compete in a public bidding process have standing to challenge the award of the contract. Accordingly, Byrne & Jones had standing to challenge the school district's award of the contract to ATG Sports in that Byrne & Jones alleged that the school district's favoritism toward and collusion with ATG Sports prevented Byrne & Jones from having a fair and equal opportunity to compete.

### The Requested Relief

In arguing that it had standing to challenge the award of the contract, Byrne & Jones asserted that it was entitled to injunctive and monetary relief. In its petition, Byrne & Jones requests that the school district be enjoined "from entering into any contract with ATG Sports . . . for the design and construction of the stadium facility project[.]" As conceded at oral argument, however, Byrne & Jones did not seek a preliminary injunction or temporary restraining order to prevent the school district from entering into the contract with ATG Sports. The school district and ATG Sports, therefore, entered into a

contract that resulted in ATG Sports building and completing the athletics stadium that is currently in use at Monroe City High School.

It would be impossible for this Court to enjoin the school district from entering into a contract with ATG Sports because such a contract was, in fact, entered into and the project has since been completed. Mootness is a threshold question that may be addressed by this Court *sua sponte*. *State ex rel. Reed v. Reardon*, 41 S.W.3d 470, 473 (Mo. banc 2001). "When an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed." *Id.* (internal quotation omitted). Byrne & Jones' request for injunctive relief, therefore, is moot. *See id.*

Additionally, Byrne & Jones sought an award of its bid preparation costs. Byrne & Jones argues that it should be allowed to recover its bid preparation costs because it would encourage more bidders to participate in the bidding process by ensuring public entities afford bidders an equal opportunity to compete that would, in turn, benefit the public interests that section 177.086.2 seeks to protect. By requesting its bid preparation costs, Byrne & Jones is essentially asking this Court to create a new cause of action. Section 177.086.2 provides no authority for a new cause of action or recovery of such damages. This Court will not interpret a statute to establish a private cause of action without clear implication of the legislature's intent to do so. *Dierkes v. Blue Cross & Blue Shield of Mo.*, 991 S.W.2d 662, 667 (Mo. banc 1999). Byrne & Jones, therefore, is

15

not entitled to recover its bid preparation costs under the statute.[6]  Accordingly, even affording the pleadings their broadest intendment and treating all facts alleged as true, Byrne & Jones is still not entitled to the relief requested in the petition.  Therefore, the trial court did not err in dismissing Byrne & Jones' petition for a declaratory judgment.

### Conclusion

Byrne & Jones had standing to challenge the award of the contract to ATG Sports because it alleged that it was denied a fair and equal opportunity to compete in the bidding process for the stadium project.  Nevertheless, the trial court did not err in dismissing Byrne & Jones' petition because Byrne & Jones was not entitled to the requested relief.  Consequently, this Court affirms the trial court's judgment.

_____
PATRICIA BRECKENRIDGE, CHIEF JUSTICE


Stith, Draper, Teitelman and Russell, JJ.,
concur; Wilson, J., concurs in result in
separate opinion filed; Fischer, J., concurs
in separate opinion of Wilson, J.

---

[6] Byrne & Jones further relies on cases from other jurisdictions in which courts have permitted the recovery of bid preparation costs. *See Owen of Georgia, Inc. v. Shelby Cnty.*, 648 F.2d 1084, 1095 (6th Cir. 1981); *Meccon, Inc. v. Univ. of Akron*, 933 N.E.2d 231, 232 (Ohio 2010); *Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 1 P.3d 63, 71-72 (Cal. 2000); *N. Twin Builders, LLC v. Town of Phelps*, 800 N.W.2d 1, 2 (Wis. App. 2011).  The majority of these cases, however, are distinguishable from the present case in that monetary damages were awarded because the trial court wrongfully denied the unsuccessful bidder's timely request for injunctive relief, *see Meccon*, 933 N.E.2d at 235, or the unsuccessful bidder was entitled to monetary relief under a theory of promissory estoppel. *See Owen*, 648 F.2d at 1096; *Kajima/Ray*, 23 Cal. 4th at 319.

16


BYRNE & JONES ENTERPRISES, INC. )
D/B/A BYRNE AND JONES )
CONSTRUCTION, )
 )
     Appellant, )
 )
v. ) No. SC94680
 )
MONROE CITY R-1 SCHOOL DISTRICT, )
 )
     Respondent. )

### OPINION CONCURRING IN RESULT

The trial court dismissed the petition filed by Byrne & Jones Enterprises, Inc.

("B&J") on the ground that B&J lacked standing. Even though the trial court's action

(i.e., dismissal) was correct, its reasoning was overbroad. Standing is assessed with

respect to each claim, and a claim is prayer for specific relief based on alleged facts. If

section 177.086.2[1] authorizes losing bidders to recover their bid preparation costs in

cases in which the bidding procedures were not followed, B&J (as a losing bidder)

plainly would have had standing to bring such a claim. Rather than a lack of standing,

however, the majority opinion holds – properly, in my view – that B&J's claim for bid

---

[1] Unless otherwise stated, all statutory references are to RSMo Supp. 2013.

preparation costs should have been dismissed for failure to state a claim because such a claim is not expressly provided for in (and this Court will not infer such a claim from) the language of section 177.086.2.

B&J's only other claim was a prayer for an injunction to prevent Monroe City R-1 School District (the "District") from going forward with its construction project on the basis of the contract it let to the winning bidder, ATG Sports, Inc ("ATG"). This claim (like B&J's claim for bid preparation costs) was based on allegations that the District failed to comply with the bidding procedures in section 177.086.2 when awarding the contract to ATG. But this Court cannot reach the question of whether B&J has standing to bring such a claim because the relief sought is no longer available, i.e., because B&J's claim for injunctive relief is moot.

> [T]his court has said that [c]ourts are not organized and maintained for the purpose of vindicating the actions of parties in bringing lawsuits or to settle abstract propositions of law, where no relief can be granted. That some relief is sought which may be granted is the only reason the courts recognize for the prosecution of causes. ***If no relief can be granted, either because it appears that such relief has already been obtained, or because the situation has so changed that the relief sought cannot be granted, the court will not go through the empty formality of determining whether or not the relief asked for might have been granted***, if it had not already been granted or could have been granted but for changed conditions.

*Gershman Inv. Corp. v. Danforth*, 475 S.W.2d 36, 38 (Mo. banc 1971) (emphasis added) (quotations and citations omitted). *See also Dotson v. Kander*, 435 S.W.3d 643, 644 (Mo. banc 2014) ("To exercise appellate jurisdiction, there must be an actual controversy that is 'susceptible of some relief.' When an event occurs that makes a court's decision

2

unnecessary or makes granting effectual relief impossible, the case is moot and should be dismissed.") (citations omitted).

The majority opinion concludes that, because B&J's claim for injunctive relief is moot, there is no basis to vacate the trial court's dismissal and remand. I agree. Unfortunately, however, the majority opinion then goes on at some length to explain why – if B&J's claim for injunctive relief were not moot – B&J *should have had* standing to pursue it. This is exactly the type of wholly advisory opinion that *Gershman*, *Dotson*, and a host of other cases on the effect of mootness are meant to prevent. I write separately to explain not only that the majority opinion's ruminations about this subject are dicta in this case, but also that they should not be followed in future cases.

State bidding statutes – including section 177.086.2 – are enacted to protect the public, not the bidders. As a result, precedent of long standing explains that only taxpayers have standing to enforce those laws once a contract is awarded. B&J is not (and does not claim to be) a taxpayer of the District, and the trial court was correct in concluding that B&J lacks standing to assert its claim for injunctive relief.

B&J's petition references "the competitive bidding process required by law" but fails to cite any state statutes or local regulations applicable to the District's project. On appeal, B&J bases its claim solely on section 177.086, which provides in pertinent part:

> No bids shall be entertained by the school district which are not made in accordance with the specifications furnished by the district and all contracts shall be let to the lowest responsible bidder complying with the terms of the letting, provided that the *district shall have the right to reject any and all bids*.

§ 177.086.2 (emphasis added).

3

B&J claims that it has a legally protectable interest sufficient to give it standing to seek an injunction to prevent the District from proceeding with its construction project under the contract it let to ATG based on the District's alleged violation of section 177.086.2. This Court properly rejected such claims more than a century ago.

> It is, indeed, asserted that the defendant rejected the plaintiffs' bid 'without cause, arbitrarily and capriciously, through favoritism and bias.' But, ***if the defendant had the absolute right to reject any and all bids***, no cause of action would arise to plaintiffs because of the motive which led to the rejection of their bid. The right to reject the bids was unconditional. Defendant was entitled to exercise that right for any cause it might deem satisfactory, or even without any assignable cause.

*Anderson v. Bd., etc., of Pub. Sch.* 27 S.W. 610, 612 (Mo. 1894) (emphasis added).

Later, this Court expanded on *Anderson* in *State ex rel. Doniphan State Bank v. Harris*, 176 S.W. 9 (Mo. 1915). There, the Court held that a party "has no right to maintain this proceeding simply in its capacity as an unsuccessful bidder, ***but must maintain it, if at all, in its role as a taxpayer in Ripley County***. In that capacity it represents the public, and it is the interest of the public which is to be considered, not that of relator as a bidder for the funds." *Id.* at 10 (citation omitted, emphasis added).

*Anderson* and *Harris* formed the basis for *State ex rel. Johnson v. Sevier*, 98 S.W.2d 677, 680 (Mo. banc 1936), which remains this Court's leading decision on the issue of standing to enforce public bidding laws. *Sevier* holds that – when a losing bidder is not also a taxpayer – the losing bidder lacks standing to challenge the award of a public contract to another based on a violation of public bidding laws because:

> it was incumbent upon them to allege a special pecuniary interest in the matter, showing a clear legal right to the relief asked, which they did not and cannot do,

4

> for the reason that the ***rejection of their bid did not give them any private right*** which they could enforce by mandamus or otherwise.

*Sevier*, 98 S.W.2d at 679 (emphasis added).

*Sevier* reaches this conclusion on two grounds, both of which are applicable to and dispositive of the question of standing in this case. First, if a public entity has authority to reject any bid (or all the bids), a losing bidder has no legally protectable interest in the outcome of the bidding process (or, at least, no interest that is different from the taxpayer's interest). *Id.* *See also Regan v. Iron County Court*, 125 S.W. 1140, 1142 (Mo. 1910) (not even the "highest and best bidder" has a right to the contract when the statute expressly gives the public entity authority to reject "any and all bids"). Second, *Sevier* holds that a losing bidder lacks standing because public bidding statutes are "designed for the benefit and protection of the public and not the bidders." *Id.* As a result, unless the bidder sues as a taxpayer and representative of the general public interest, it has no standing to enforce such laws and challenge the award of a public contract. *Id.*

In *La Mar Const. Co. v. Holt County, R-II Sch. Dist.*, 542 S.W.2d 568, 570 (Mo. App. 1976), the court of appeals applied *Sevier* and held that a losing bidder has no standing to challenge a school district's compliance with section 177.086.2 after the contract is awarded. Following the two-step analysis in *Sevier*, *La Mar* first holds that the losing bidder lacked standing because it has suffered no injury to a legally protected interest. *Id.* (noting *Anderson* "recognized the principle of law that where a public body reserves the right to reject any and all bids that are submitted to it they are empowered to do just that and by rejecting a bid they create no vested interest or property right in the

5

rejected bidder"). *See also State ex rel. Page v. Reorganized Sch. Dist. R-VI of Christian County*, 765 S.W.2d 317, 321 (Mo. App. 1989) (even the lowest and best bidder has no right to relief under section 177.086.2). Second, *La Mar* holds that section 177.086.2 "clearly is intended to safeguard the interest of the public and is not designed to shelter the rights of individuals, i.e., the unsuccessful bidder." *La Mar*, 542 S.W.2d at 571. *See also O. J. Photo Supply, Inc. v. McNary*, 611 S.W.2d 246, 248 (Mo. App. 1980) (competitive bidding laws "are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders").

Accordingly, *La Mar* holds that only a taxpayer – not a losing bidder that is not otherwise a taxpayer – has standing to challenge a school district's compliance with section 177.086.2 after the contract is awarded:

> La Mar has not brought this suit as a taxpayer or as a representative of other taxpayers but rather has sought relief to enforce the performance of an alleged public duty to protect an alleged private right. It is necessary for La Mar to allege a private, pecuniary interest in the matter ***but as an unsuccessful bidder it has no private, pecuniary interest in this matter which the law will recognize and enforce***. As an unsuccessful bidder, La Mar was not deprived of anything to which it was legally entitled and therefore cannot state a cause of action.

*La Mar*, 542 S.W.2d at 570-71 (citation omitted, emphasis added). *See also Sevier*, 98 S.W.2d at 681.

B&J argues that a losing bidder should have standing to enforce the provisions of section 177.086.2 after the contract is awarded because, as noted in *La Mar*, "[t]he rejection of the lowest bid must not be made fraudulently, corruptly, capriciously or without reason." *La Mar*, 542 S.W.2d at 571. Instead, "[t]he officials must exercise and

6

observe good faith and accord all bidders just consideration, avoiding favoritism and corruption." *Id.* The majority opinion (albeit in dicta) agrees.

But the majority opinion's conclusion that B&J has standing to seek an injunction (or would have had such standing had this claim not been moot) because B&J was "denied a fair and equal opportunity in the bidding process" confuses two unrelated concepts, i.e., the basis ***for*** a claim and standing to ***bring*** that claim. Invoking *La Mar*, the majority opinion concludes that B&J's petition alleges a sufficient basis for a claim of collusion and favoritism against the District. This is correct – the petition describes a violation of section 177.086.2. But that is not the question. The question is whether B&J has standing to bring such a claim. That is why *La Mar*, after describing that favoritism and collusion may be the basis for a claim, expressly holds that only taxpayers as representatives of the public – and not losing bidders – have standing to bring such a claim. *La Mar*, 542 S.W.2d at 571 ("If any of these standards are violated ***the public, as the real, moving party***, may bring mandamus to enforce cancellation of the contract and its award to the lowest responsible bidder.") (Emphasis added).[2]

*La Mar*, *Sevier*, and *Anderson* cannot be distinguished from this case on the ground that B&J is challenging the District's process, not its decision to award the

---

[2]  To be clear, the prohibitions against capriciousness, collusion, and favoritism described in *La Mar* and similar cases are meant only to identify those circumstances in which a ***taxpayer*** may challenge the award of a public contract from those in which the award is within the entity's unreviewable discretion**.** *Compare State ex rel. Stricker v. Hanson*, 858 S.W.2d 771, 778 (Mo. App. 1993) (enjoining award of contract to nonresponsive bidder), with *KAT Excavation, Inc. v. City of Belton*, 996 S.W.2d 649, 652 (Mo. App. 1999) (upholding award of contract as proper exercise of discretion). *See also Regan*, 125 S.W. at 1140 (discussing discretion afforded by competitive bidding statutes generally); *Page*, 765 S.W.2d at 322 (same).

7

contract to ATG, because this is not supported by B&J's allegations. Where B&J alleges that the District "acted arbitrarily, capriciously, unfairly, and in violation of the competitive bidding process required by law," the allegation expressly states that the District did so by "***accepting the bid*** of ATG[.]" [Emphasis added.] Similarly, where B&J alleges that the District "did not act in good faith, or in the best interest of the public … [and] in collusion with ATG and with personal favoritism for ATG," the allegation expressly states that the District committed these infractions by "***awarding the project*** to ATG[.]" [Emphasis added.] Even though B&J alleges that the District did not give B&J a "fair opportunity" to compete against ATG, B&J does not claim that section 177.086.2 gives it that right. Such a claim would be unwarranted because the statute expressly authorizes the District to reject "any bid," including the bid from B&J.

Nothing in section 177.086 (or the Missouri cases construing this or any other competitive bidding statute) draws a distinction between the bidding process and the award of a contract. ***All*** requirements imposed by state bidding laws are concerned with process, and those requirements are imposed solely "for the benefit and protection of the public and not the bidders." *Sevier*, 98 S.W.2d at 679. So, if the contracting entity is permitted to reject "any and all bids," an individual bidder is not permitted to wait until the bidding process is over and the contract is awarded before claiming entitlement to any particular process or consideration.[3] Only the public, through its representative

---

3 I do not mean to suggest that a bidder or potential bidder lacks standing to seek declaratory or injunctive relief based upon alleged violations of a state bidding law while the bidding process is ongoing. That question, like the question of losing-bidder standing after the contract is awarded, is not before the Court.

8

taxpayers, has standing after the contract is awarded to enforce the bidding laws and challenge the performance of the officials involved, and the taxpayers' remedy is limited to declaratory or injunctive relief. *See E. Mo. Laborers Dist. Council v. St. Louis County*, 781 S.W.2d 43, 46 (Mo. banc 1989) ("The right of a taxpayer, on behalf of himself and other taxpayers similarly situated, to bring an action to enjoin the illegal expenditure of public funds cannot be questioned."); *Stricker*, 858 S.W.2d at 778 (same).

Great reliance is placed upon a lone federal case holding that, under Missouri law, "an unsuccessful bidder has standing to challenge a contract that was not fairly bid." *Metro. Express Servs., Inc. v. City of Kansas City, Mo.*, 23 F.3d 1367, 1371 (8th Cir. 1994). This conclusion is neither binding nor persuasive, however, because it is based solely on *Stricker*, and the question of losing-bidder standing was never at issue in *Stricker* because the state conceded that at least some of those challengers were taxpayers. *Stricker*, 858 S.W.2d at 775 (whether the non-taxpayer losing bidder "has standing as a participant in the public contract process is of no consequence to this action and is not addressed by this court").[4] Aside from its misplaced reliance on *Stricker*, *Metropolitan Express* makes the mistake of focusing on the statements in *La Mar* describing an actionable violation of public bidding laws but ignoring the holding in *La Mar* that only taxpayers may bring such claims. Accordingly, *Metropolitan Express* misstates Missouri law on this issue.[5]

---

[4]  In addition, the plaintiff in *Metropolitan Express* was a not a losing bidder because it was not permitted to bid at all.

[5]  Reliance on *Pub. Commc'ns. Servs., Inc. v. Simmons*, 409 S.W.3d 538, 546, (Mo. App. 2013), also is misplaced because it, too, relies on *Metropolitan Services* for the proposition that an

9

To ignore Missouri precedent and conclude (even in dicta) that a losing bidder can have standing to seek an injunction based on alleged violations of state bidding laws after the contract has been let is to create a new remedy for unsuccessful bidders out of whole cloth. That is a legislative process,[6] not a judicial one. If the General Assembly,

unsuccessful bidder has standing to challenge a contract award under Missouri law "if the bidding procedure did not permit all bidders to compete on equal terms." *Id.* at 546 (quoting *Metro. Express,* 23 F.3d at 1371). As explained above, this is a misstatement of Missouri law.

[6] Many states have enacted statutory or administrative remedies allowing losing bidders to challenge a bidding process both before and after the contract has been let. Ordinarily, these remedies are administrative and, if such administrative remedies are pursued in a timely fashion, subject to judicial review. Moreover, some (but certainly not all) permit a stay of the contract in the event of a timely protest. *See* Ala. Admin. Code r. 355-4-1-.04(14) (requiring "[a]ny bidder adversely affected" to file a notice of protest and a formal written protest seven days thereafter); Ala. Code § 41-16-31 (should a protest prove unsuccessful, a "bona fide unsuccessful bidder" may "bring a civil action in the appropriate court to enjoin execution of any contract entered into[.]"); Alaska Stat. §§ 36.30.560 – .699 (providing for both a pre- and post-award protest procedure by "an actual or prospective bidder or offeror" either before the award or within 10 days thereafter); Alaska Stat. § 35.30.685 (providing for appeal to the superior court for certain final bid protest decisions); Ariz. Admin. Code R2-7-A901 – A911 (permitting any "interested party" to bring a pre- or post-award protest); Ark. Code § 19-11-244 (permitting protest brought within 14 days by "[a]ny actual or prospective bidder, offeror, or contactor"); Ark. Code § 19-11-244(g) (providing successful protestors with the right to pursue bid and proposal costs through the Arkansas Claims Commission and allowing for review of final protest decision by mandamus or injunctive relief); California's bid protest procedures vary depending on the goods at issue and the type of solicitation, although California's rules do not allow for a pre-award protest, *see*, *e.g.*, Cal. Pub. Cont. Code § 10306 (covers the state's acquisition of goods and services), § 10345 (covers consulting and service contracts), § 12102.2(g) (covers information technology goods and services), and § 12126 (provides for an "alternative protest procedure"). In California, review of alternative protests is limited, Cal. Code Regs. title 1,§ 1438, while administrative mandamus review is available otherwise, Cal. Civ. Proc. Code § 1094.5, or under a writ of mandate procedure, Cal. Civ. Proc. Code § 1085; Colo. Rev. Stat. § 24-109-102 (providing for protest within seven working days by "[a]ny actual or prospective bidder, offeror, or contractor"); Colo. Rev. Stat. §§ 24-109-205 – 206 (appeal of a final protest decision lies under the exclusive jurisdiction of the Denver district court and may be taken within 10 working days after the decision); Conn. Gen. Stat § 4e-36 (providing for protest by "[a]ny bidder or proposer on a state contract…to a subcommittee of the State Contracting Standards Board" not later than 14 days, which is specifically limited "to the procedural elements of the solicitation or award process, or claims of an unauthorized or unwarranted, noncompetitive selection process"); Conn. Gen. Stat. § 4e-37(j) (providing that a subcommittee decision is "final and not subject to appeal"); Delaware does not have a formal administrative protest process although agency heads

10

institute informal processes under the general authority provided to them by 29 Del. Code § 8903 (2012), *see*, *e.g.*, Policy of State of Delaware Department of Corrections Bureau of Management Services, Procurement Protest Policy (Eff. November 27, 2012); Fla. Stat. § 120.57(3)(b) (providing for protest procedures for any person "adversely affected by the agency decision" and requiring the filing of a notice of protest within 72 hours and a subsequent formal written protest filing 10 days thereafter); Fla. Stat. § 120.68 (protest decisions reviewable by the court of appeals); Ga. Vendor Manual § 3.8, p. 25 (2010) (permitting "any aggrieved vendor interested in and capable of responding to a competitive solicitation" to file a protest within two business days prior to the closing date of the solicitation and allowing for a stay in the event a protest is timely filed); *Amdahl Corp. v. Georgia Dep't. of Admin. Serv.*, 398 S.E.2d 540 (Ga. 1990) (allowing for judicial review when declaratory relief is sought in the trial court after exhaustion of administrative procedures); Haw. Rev. Stat. § 103D-701 (permitting protest by "[a]ny actual or prospective bidder, offeror, or contractor who is aggrieved" within five working days); Haw. Rev. Stat. § 103D-710(a) (permitting appeal of a final protest bid decision "in the circuit court of the circuit where the case or controversy arises"); Idaho Code § 67-9232 (permitting protest of the terms of a solicitation by any vendor within 10 working days, by a nonresponsive bidder within five working days, by a bidder whose bid was considered but rejected within five working days, and "in the case of a sole source procurement," by any vendor within five working days "from the last date of public notice"); Idaho Code §§ 67-5272 – 5273 (permitting judicial review within 28 days after the final order or decision); Illinois protest procedures vary by state agency, although most allow for the filing of a protest within seven to 14 calendar days after a solicitation is issued but do not appear to allow for judicial review, *see*, *e.g.*, 44 Ill. Adm. Code § 2600.1120(b)(1), 44 Ill. Admin. Code § 1.5550, 44 Ill. Admin Code § 500.1330; Indiana allows for a pre-award protest brought within five business days prior to the bid due date and a post- award protest brought within five business days of the award, *see* Indiana Department of Administration, Procurement Protest Policy (Eff. Nov. 1, 2013); Iowa Admin. Code r. 11-117.20(8A) (2015) (setting out written protest procedures within five calendar days from the date of the award for "[a]ny vendor that filed a timely bid or proposal" and permitting judicial review after exhaustion of administrative procedures), Kan. Stat. § 75-3739 (providing that the director of purchases must give seven days' notice to allow for protest); Kan. Stat. § 77-613 (appeal allowed under judicial review of agency action); Ky. Rev. Stat. § 45A.285 (permitting written protest by "[a]ny actual or prospective bidder, offeror, or contractor who is aggrieved" within two calendar weeks); *Commonwealth v. Yamaha Motor Mfg. Corp. of Am.*, 237 S.W.3d 203 (Ky. 2007) (holding that an unsuccessful bidder has standing for purposes of judicial review under § 45A.285 after exhausting administrative procedures); La. Rev. Stat. § 39:1671 (permitting protest by "[a]ny person who is aggrieved in connection with the solicitation or award of a contract" either two days prior to the award or within 14 days thereafter); La. Rev. Stat. § 39:1691 (appeals lie exclusively with the Nineteenth Judicial District Court but further appeals may be sought the court of appeals and then to the Supreme Court of Louisiana); 5 Me. Rev. Stat. § 1825-E (permitting "aggrieved persons" right of written protest for contract or grant awards within 15 days of award notification); 5 Me. Rev. Stat. § 1825-F (final protest decision subject to judicial review); Md. Code Regs. 21.10.02.02 – 21.10.02.03 (providing for the filing of both a pre- and post-award written protest by "[a]n interested party"); Md. Code Regs. 21.10.01.02 (bid protest decision subject to judicial review); Massachusetts allows for a civil action to enjoin the award or grant of a contract and

11

also includes an informal protest process by the Attorney General's Office that is not subject to judicial review, *see* Attorney General of Mass., General Guidelines Regarding Attorney General Bid Protest Cases; Michigan too has only an informal bid protest policy, *see* Mich. Comp. Laws § 18.1261(2); Minnesota has no formal bid protest procedure; Mississippi bid protest procedures vary, but they may be protested to the Public Procurement Review Board, *see* Miss. Procurement Manual §§ 6.101 – 204 (Eff. Sept. 30, 2015); Mont. Code § 18-4-242 (permitting the protest of a solicitation or award of contract within 14 days in writing by "a bidder, offeror, or contractor"); Mont. Code § 18-4-242(7) (exclusive method of appellate review is judicial review); Nebraska provides for a post award written protest within10 calendar days of award, *see* Neb. Administrative Services Materiel Division – State Protest Bureau, Standard Protest/Grievance Procedures for Vendors (Revised Apr. 16, 2014), and the right to appeal appears limited, *see Day v. City of Beatrice*, 101 N.W.2d 481, 488 (Neb. 1960) ("An unsuccessful bidder is not a proper party to bring an injunction suit to prevent an unlawful expenditure of funds by public officials unless he is also a taxpayer, which must properly be alleged and proved."); Nev. Rev. Stat. § 333.370 (permitting the filing of a notice of appeal within 10 calendar days by "[a] person who makes an unsuccessful bid or proposal"); N.H. Code Admin. R. 609.02 (providing "informal resolution" to "[a]ny person or association who disagrees with an award" within 15 days); N.H. Rev. Stat.      § 541:6 (appeal to the supreme court may be taken within 30 days after decision on rehearing); N.J. Admin Code §§ 17:12-3.2 & 17:12-3.3 (providing for pre-award written protest procedures at least three days prior to bid opening by "[a] vendor intending to submit a proposal"  and within 10 days after a bidder "having submitted a proposal" received notice of decision); N.J. Admin Code § 17:12-3.1(b) (final decisions appealable to the appellate division of the Superior Court of New Jersey); N.M. Stat. § 13-1-172 (providing for written bid protest to "[a]ny bidder or offeror who is aggrieved in connection with a solicitation or award" within 15 days); N.M. Stat. § 13-1-183 (final decision subject to judicial review); New York does not require administrative exhaustion before judicial review of any final decision but nonetheless various offices have detailed protest procedures, *see*, *e.g.*, Office of the New York State Comptroller, Contract Award Protest Procedure for Contract Awards Subject to the Comptroller's Approval (July 10, 2008); 1 N.C. Admin. Code 5B.1519 (providing post-award protest procedures for written protest bids filed within 30 days); N.D. Cent. Code § 54-44.4-12, N.D. Admin. Code 4-12-14-01 – 4-12-14-02 (providing written pre- and post-award protest procedure within seven days of the deadline or decision for "[a]n interested party" for "the award of a contract, the notice of intent to award a contract, or a solicitation for commodities or services by the office of management and budget or purchasing agency"); N.D. Admin. Code 4-12-14-03(1)(c) (discussing the right to judicial and administrative review); Ohio's protest procedures are informally set out by the Office of State Procurement and allow for both pre- and post-award protest, *see* Ohio Department of Administrative Services, General Services Division, Supplier Handbook 15 (Rev. June 2015); Okla. Admin. Code § 260:65-1-12 (providing written bid protest procedures for a "bidder" for the "protest of an award of a contract by a state agency … within ten business days of contract award"); Okla. Admin. Code § 260:65-1-12(6) (providing judicial review of the denial of a bidder's appeal to the director); Or. Rev. Stat. § 279B.405 (providing bid protest filing procedures for a "prospective bidder, proposer, or offeror" and establishing procedures for judicial review); 62 Pa. Cons. Stat. § 1711.1 (providing pre- and post-award written protests before bid opening or within seven days after decision for "[a] bidder or offeror, a prospective bidder or offeror or a prospective contractor that is aggrieved in

administrative agencies, or local governments believe such a remedy is in the best

interests of all they serve, they can create one.  And, in doing so, they likely will give far

more clarity regarding the nature and extent of that remedy than any judicial decision.

For example, a legislated remedy allowing losing bidders to challenge the award of a

contract based on alleged violations of the bidding laws likely would have a time limit to

connection with the solicitation or award of a contract"); 62 Pa. Cons. Stat. § 1711.1(g) (providing for appeal within 15 days of the mailing date of a final decision); R.I. Gen. Laws § 37-2-52 (providing "[a]ny actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation or selection of an award" to file a written protest within two weeks); R.I. Gen. Laws § 37-2-51 (on appeal, decisions in connection with the solicitation or award of a contract are presumed to be correct); S.C. Code § 11-35-4210 (providing written protest procedures for "[a] prospective bidder, offeror, contractor, or subcontractor … aggrieved in connection with the solicitation of a contract" or "with the intended award or award of a contract" within 10 to 15 days); S.C. Code § 11-35-4410(6) (final decision appealable to the circuit court); South Dakota has no formal bid protest procedure, although bidders may have taxpayer standing, *see H & W Contracting, LLC v. City of Watertown*, 633 N.W.2d 167, 171 (S.D. 2001) ("[A] taxpayer need not…suffer special injury…to institute an action to protect public rights.") (internal quotations omitted); Tennessee's bid protest procedures are promulgated by the Department of General Services, *see* Tenn. Comprehensive Rules and Regulations of the Central Procurement Office,    § 0690-03-01.12, and apply to "any aggrieved respondent, challenging the procurement process or contract award[.];" 34 Tex. Admin. Code § 67.201 (providing for written bid protest procedure for vendors "aggrieved by the solicitation, evaluation, or award of a contract" within 10 calendar days); 34 Tex. Admin. Code § 67.201 (agency director's decision is final and no further appeals permitted); Utah Code § 63G-6a-1602 (providing for the filing of an award protest by "a person" with "standing" and who "is aggrieved in connection with a procurement or an award of contract"); Utah Code § 63G-6a-1603(7) (noting decision "is effective until stayed or reversed on appeal"); Vermont does not appear to have a formal administrative protest process, although informal processes may exist; Va. Code § 2.2-4360 (providing a written bid protest procedure for "[a]ny bidder or offeror, who desires to protest the award or decision to award a contract" filed within 10 days after the award); Va. Code § 2.2-4364(f) (if invoked, a bidder must exhaust administrative remedies prior to judicial review); Wash. Admin. Code    § 200-320-500 ("Bidders or potential bidders may file complaints regarding the bidding process."); Wash. Admin. Code § 200-320-700 – 710 (appeals to be filed within 28 days after award "as identified in the solicitation" and by unsuccessful bidders only "with regard to elements of the bid submittal and evaluation process"); W. Va. Code R. § 148-1-8 (providing pre- and post-award written protest procedure); Wis. Adm. Code NR § 747.68(6) (providing a written protest procedure for "[a] responsible party or a bidder" within 10 days after issuance and permitting administrative appeals); 4 Wyo. Admin. Code § 1 (providing written protest procedures for "bidders, proposers or qualified potential bidders or proposers" within 10 days of notice of intent to award).

protect the contracting agency (and the public) from claims brought by a losing bidder after reliance upon the contract becomes too great.  This is preferable to permitting a losing bidder to sue at any time as long as the contract has not been fully performed, i.e., as long as its claim for injunctive relief is not moot.

Ultimately, the rationale for giving standing to "all bidders … within the zone of interests" is not persuasive.  It is not self-evident that the century-old taxpayer standing limitation in these cases is keeping a material number of meritorious claims out of the courthouse.  Losing bidders who are taxpayers can sue, and those who are not taxpayers should have no difficulty in recruiting a taxpayer to join the suit if there is a manifest injury to the public's interests.[7]

### *Conclusion*

Because a losing bidder has no legally protectable interest in the enforcement of section 177.086.2 after the contract is awarded (or at least no interest distinct from the public's interest that the statute was enacted to protect), and because B&J does not claim to be a taxpayer suing as a representative of the public, I reject the dicta in the majority opinion suggesting that – if its claim for injunctive relief were not moot – B&J would

---

[7]  *See, e.g.*, *Stricker,* 858 S.W.2d at 775; *KAT Excavation*, 996 S.W.2d at 650; *see also Harris*, 176 S.W. at 10 ("Relator has no right to maintain this proceeding simply in its capacity as an unsuccessful bidder, but must maintain it, if at all, in its role as a taxpayer in Ripley county.  In that capacity it represents the public, and it is the interest of the public which is to be considered, not that of relator as a bidder for the funds.") (citation omitted).

have standing to bring that claim.  Instead, the holding that B&J's claim for injunctive relief is moot is correct, and, respectfully, it is all that should be discussed.


                                          _____
                                          Paul C. Wilson, Judge

15